John N. LEIDLER, Plaintiff–Appellant,

v.

Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.

No. 89–2369
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 10, 1989.

---

Jeffrey J. Skarda, Atty., Gulf Coast Legal Foundation, Houston, Tex., for plaintiff-appellant.

John M. Gough, Rodney A. Johnson, Asst. U.S. Attys., Henry K. Oncken, U.S. Atty., Houston, Tex., for defendant-appellee.

Before GEE, DAVIS, and JONES, Circuit Judges.

EDITH H. JONES, Circuit Judge:

In this case we revisit our decision in *Singletary v. Bowen*, 798 F.2d 818 (5th Cir.1986), in which we considered the criteria for assessing whether a person afflicted by a severe mental illness can obtain Social Security benefits. This case, like *Singletary*, requires a remand for re-examination by the Secretary.

Leidler applied for Social Security disability insurance benefits on October 10, 1985, alleging a commencement date of March 1, 1983, because of paranoid schizophrenia. The ALJ's decision [1] acknowledges, as it must, that his severe psychiatric condition dates from at least November 1971, when he was hospitalized for an acute psychotic episode. Since that time, he has been under constant professional supervision and has controlled his symptoms somewhat with anti-psychotic medication. His diagnosis ranged from that of paranoid schizophrenia to bipolar disorder, manic, in re-

mission. Based on the uncontested documentation of Leidler's mental illness, the ALJ concluded

> That the claimant's impairment is severe as that term is defined in Social Security Regulations as it more than slightly restricts the claimant's ability to perform basic work-related functions.[2]

The significant issues in this case are the onset date of Leidler's disability, and whether he is in fact disabled according to Social Security regulations. These were precisely the issues addressed by our Court in *Singletary*.

Confronted with a similarly extensive history of severe mental illness, combined with an applicant's ability to work only intermittently, our Court reversed and remanded the Secretary's denial of benefits on two grounds. First, *Singletary* held that the twelve-month durational requirement for disability could be met in severe mental illness cases even though a claimant is able to work sporadically at a series of jobs. "A finding that a claimant has a mental impairment which manifests itself from time to time over a long-term period is not inconsistent with the language of the statute, which requires that an impairment last 'for a continuous period of twelve months.' 42 U.S.C. § 423(d)(1)(A) (1982); *see also*, 20 CFR § 404.1509." 798 F.2d at 822.[3] This conclusion follows if a claimant has presented medical evidence which "indicates that his mental condition is a long-term problem and not just a temporary set-back." *Id.*

The second lesson of *Singletary* is that the Secretary must consider whether an applicant with a serious mental illness remains able to engage in substantial gainful

---

1. The Appeals Council refused to review the denial of benefits, leaving the ALJ decision as the final ruling by the Secretary.

2. The ALJ found, however, that Leidler's impairment did not qualify under the specific Social Security Listing of Impairments related to mental problems. Leidler contests this finding as not based on substantial evidence. There is, however, uncertainty among the diagnoses of the various doctors who have seen the applicant or reviewed his records, concerning the nature of his symptoms over the years. We must give

the benefit of the doubt, under the substantial evidence rule, to the Secretary on this conclusion.

3. The Secretary has acknowledged, in promulgating the mental impairments listings, that occasional symptom-free periods and sporadic ability to hold a job are not inconsistent with, but rather are symptomatic of, a claimant's disability. *See Poulin v. Bowen*, 817 F.2d 865, 875–76 (D.C.Cir.1987).

activity when, although he is capable of performing work, he cannot maintain regular employment. We held that the Secretary must determine whether the claimant can *hold* whatever job he finds for a significant period of time. *Id.*, citing *Parsons v. Heckler*, 739 F.2d 1334, 1340 (8th Cir.1984); *Tennant v. Schweiker*, 682 F.2d 707, 709–10 (8th Cir.1982). In that case, although Singletary was physically capable of performing and had obtained numerous types of labor, his psychiatric difficulties prevented him from remaining employed for more than limited periods of time. The court concluded substantial evidence did not support the Secretary's determination that Singletary could obtain and *maintain* employment, or that this was the finding of the ALJ. 798 F.2d 818, 823 (emphasis in original).

*Singletary* guides our resolution of the major issues presented by Leidler. As to the onset of Leidler's disability, the ALJ found that he engaged in substantial gainful activity from March 1, 1983, through at least June, 1985, consequently, he could not be considered disabled before June 30, 1985. He then found that Leidler's testimony of such a severe level of impairment "to preclude all work functions for twelve consecutive months is not fully credible." The ALJ concluded that Leidler has the residual functional capacity to perform work-related activities except for those involving emotional or high-pressured situations and that he could, in short, perform one of his past relevant jobs as a laboratory technician. The ALJ alternatively relied on the testimony of a vocational expert who asserted that Leidler could perform non-stressful jobs such as gate tender, parking lot attendant, ticket taker, or telephone delivery man.

That *Singletary* was ignored by the ALJ is certain. Leidler's work history following his 1971 hospitalization seems to typify the problems encountered by the mentally ill in retaining employment. He has, with perhaps one exception, never worked at a level commensurate with his college education. He worked four years each as a case worker and lab technician during the 1970's and early 1980's. From 1982 onward, however, his employment has been highly sporadic. He worked part-time as an interviewer for the Census Bureau and with a market research company, and has worked briefly as a telephone salesman, caretaker for a man with Parkinson's disease, delivering packages, making telephone calls for a political campaign and working or volunteering with the Houston Hunger Coalition. He also began and failed to complete courses in library science and bookkeeping. He received sustained financial support from his father throughout this period. He had no regular work after June 30, 1985.

Leidler's ability to retain work is dubious and not supported by the record. He had no regular work after June 30, 1985. Although Dr. Khushalani, the psychiatrist hired by Social Security, is quoted by the ALJ as supporting a determination of employability, this is an inaccurate characterization of his report. The psychiatrist actually said that he could foresee Leidler's "running into serious difficulties in a job environment because of his inappropriate affect." Dr. Khushalani predicted that Leidler could be prone to a "frank manic episode" if job stress were high, and that this could cause serious difficulties at work. The ALJ's medical advisor Dr. Altschuler said nothing about Leidler's ability to hold employment over a sustained period of time. He acknowledged that Leidler had been able to work "for periods of time" from 1971 to 1985. The Secretary's vocational expert was never asked to opine whether Leidler would be able to hold gainful employment for a sustained period of time. He testified, contrary to the ALJ's conclusion, that it would probably be very difficult for Leidler to return to his past work as a laboratory technician.

The ALJ nowhere comments on the opinion of Leidler's counselor for two years from 1985 through 1987. She states that Mr. Leidler had explored various job opportunities during that time and been refused employment. His jobs were always of short duration. She regarded him as a poor candidate for employment and stated that, "even where there is minimal contact with others, I believe that within a brief

time the job will be at risk." She poignantly observed that as Leidler ages, employers will be increasingly suspicious of his over-qualification for menial jobs.

We of course are bound to accept the Secretary's denial of benefits if it is based on substantial evidence considered on the record as a whole. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). Where, however, the Secretary has relied on erroneous legal standards in assessing the evidence, he must reconsider that denial. The Secretary here obviously overlooked the import of *Singletary*, which holds that in cases of severe mental illness a claimant's sporadic work history does not conflict with a finding of the onset of disability during a particular twelve-month period, and that he is disabled if he can perform work but not enjoy sustained employment because of his condition. On remand, the Secretary must apply these rules to Leidler's case.

The judgment of the district court is *REVERSED* and the case is remanded with instructions to *REMAND* to the Secretary for further consideration.

REVERSED and REMANDED.