United States Court of Appeals,

Fifth Circuit.

No. 92-1587.

Jean ATKIN, Administratrix of the Estate of Alvin A. Atkin, Plaintiff-Appellee,

v.

LINCOLN PROPERTY COMPANY, Defendant-Appellant.

May 25, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before POLITZ, Chief Judge, JOLLY, and DAVIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Alvin Atkin, 63 years old, returned to work after an extended medical leave of absence only to discover that his employer, Lincoln Property Company, had replaced him with a younger employee. Atkin filed suit against Lincoln alleging that Lincoln had terminated him because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-634. A jury agreed and returned a verdict in favor of Atkin for $56,250.00. The district court denied Lincoln's motion for judgment as a matter of law, and Lincoln appeals. Because we are unable to find sufficient evidence to support the jury's verdict, we hold that the district court erred in denying Lincoln's motion for a judgment as a matter of law. Accordingly, we reverse the judgment of the district court and remand for entry of judgment in favor of Lincoln.

I

Lincoln, a real estate company, employed Atkin as a maintenance person on September 1, 1970. When first hired by Lincoln, Atkin was 47 years old. In 1980, Atkin resigned but reapplied a few months later and was immediately rehired; he was now 56 years old. In the fall of 1986, Lincoln demoted Atkin to second maintenance man, cut his salary, and transferred him to the joint supervision of two other maintenance men at two different apartment complexes.

In February 1987, Atkin took a leave of absence with Lincoln following a hernia operation. Under Lincoln's leave of absence policy, an employee is entitled to an unpaid sixty day leave of

absence; once the employee is placed on a medical leave of absence, he may return to work only upon the written release of a doctor authorizing the employee to return to work. On March 16, 1987, Atkin received a doctor's release to return to work, and he resumed his position with Lincoln. Atkin was by now 63 years old.

Shortly thereafter, on April 28, 1987, Atkin sustained an injury at work and took a second medical leave of absence. Atkin remained on this leave until he received a doctor's release on August 19, 1987. On August 24, 1987, Atkin had been on medical leave of absence for 115 days. When he returned to resume work on this day, Atkin's former position was not available because on July 20, 1987, Lincoln had hired a replacement. Lincoln did undertake efforts, however, to determine if another position was available for Atkin. After determining that there were no positions open, Lincoln terminated Atkin's employment on August 24, 1987.

## II

Atkin filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 2, 1987, alleging that Lincoln had terminated him on the basis of his age. The EEOC dismissed the charge and issued Atkin notice of his right to sue. He filed this suit on August 16, 1989. On May 12 and May 13, 1992, the case was tried to a jury.[1] At the conclusion of Atkin's evidence, Lincoln moved for a directed verdict, which was denied. Lincoln then presented its defense, which apparently did not impress the jury: It returned a verdict in favor of Atkin for $56,250.00. Lincoln filed motions for judgment as a matter of law and, in the alternative, for a new trial. The district court denied both motions, and Lincoln appeals.

## III

On appeal, Lincoln argues that Atkin failed to present any evidence or, in the alternative, failed to present sufficient evidence to support the judgment because Atkin failed to establish a prima facie case of age discrimination. Even if Atkin has made out a prima facie case of age discrimination, Lincoln argues that Atkin failed to establish that Lincoln's proffered legitimate business reason for

---

[1]Atkin died in November 1990 and his claim was pursued by his wife. For the sake of clarity, however, we will continue to use male pronouns when referring to the claimant.

Atkin's termination was a pretext for age discrimination.

On the other hand, Atkin argues that since this case has been fully tried on the merits, it is unnecessary to address the question of whether a prima facie case has been proven. As to Lincoln's proffered legitimate business reason, Atkin argues that a reasonable factfinder could have concluded that Lincoln was not telling the truth and that this stated reason was merely a pretext.

## IV

### A

We review the district court's denial of a motion for a judgment as a matter of law "with the duty of determining whether, upon the record, a reasonable trier of fact could conclude that age was a determinative factor in the action complained of." *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.,* 865 F.2d 1461, 1465 (5th Cir.), *cert. denied,* 493 U.S. 842, 110 S.Ct. 129, 107 L.Ed.2d 89 (1989). "When reviewing a trial court's denial of motions for [judgment as a matter of law] and directed verdict under Rule 50, we are charged with determining whether, upon the record, a reasonable trier of fact could conclude that age was a determinative factor behind the employer's action." *Laurence v. Chevron, U.S.A., Inc.,* 885 F.2d 280, 282 (5th Cir.1989). We employ the same standard as the district court to determine whether sufficient evidence exists to support the jury verdict: "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict," the court should grant a motion for directed verdict or judgment as a matter of law. *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (en banc).

### B

At the close of Atkin's presentation of evidence, Lincoln moved for a directed verdict, arguing that Atkin had failed to make out a prima facie case of age discrimination. On appeal, Lincoln continues to argue that Atkin has not satisfied this first step of proving his case of age discrimination. Specifically, Lincoln argues that Atkin did not prove (1) that he was qualified for a position on July 20, 1987, the date his replacement was hired, or (2) that his replacement was outside the protected class or that someone outside the protected class was treated more favorably than Atkin. Atkin,

however, argues that July 20, 1987 is not the determinative date; instead, August 24, 1987—the date Atkin returned to work—is the essential date for purposes of proving a prima facie case, and on this day Atkin was qualified for the position.

Lincoln's medical leave of absence policy allowed an employee to take sixty days of medical leave; Atkin, however, took 115 days of leave. During Atkin's leave of absence, Lincoln rotated other employees to his position. Even after Atkin's sixty days of leave ended, however, Lincoln continued to rotate these employees to fill Atkin's position for another twenty days. It was not until Atkin had been on medical leave for eighty days that Lincoln hired an employee to fill this position. At this time, however, Lincoln did not notify Atkin that his position had been filled by another employee. Indeed, Lincoln even admits that it did not consider Atkin officially terminated until August 24, 1987, the day Atkin returned to work and no positions were open.

Although Lincoln had no obligation to keep Atkin's position open any longer than the sixty days of medical leave of absence, it is plausible that Atkin could have reasonably assumed that Lincoln was doing exactly this. Lincoln never told Atkin that he had no job, never told him that it had hired someone else, and never told him there may be no openings when he returned to work. Atkin visited Lincoln's office on August 19, 1987 and presented his medical release to return to work and stated that he would be back on August 24, 1987. Lincoln gave no indication to Atkin that he may not have a job. Lincoln instead made inquiries to three of its divisions to see if there were any positions open. Two divisions had no positions open, but the third was unsure. Atkin returned to work on August 24, assuming he was to continue in his former position or, at the least, in a similar position. At this time Lincoln again called its third division to see if there was a position open. There was not, and Lincoln told Atkin that he no longer had a job. From this evidence, it appears that—as Atkin argues and as the jury apparently found—Atkin's employment with Lincoln ended on August 24, 1987, and not July 20, 1987, the date his replacement was hired.

C

Determining which date Atkin was officially terminated may well have been important for purposes of the sufficiency of Atkin's prima facie case. However, because this case has been fully

tried on the merits, we "need not address the sufficiency of [Atkin's] prima facie case, and may instead proceed directly to the ultimate question whether [Atkin] has produced sufficient evidence for a jury to find that discrimination has occurred." *Walther v. Lone Star Gas Co.,* 952 F.2d 119, 122-23 (5th Cir.1992); *see also Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 (5th Cir.1992), *cert. denied,* --- U.S. ----, 113 S.Ct. 1253, 122 L.Ed.2d 652 (1993). "When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage ... is unimportant. We focus our inquiry on whether the record contains evidence upon which a reasonable trier of fact could have concluded as the jury did." *Molnar v. Ebasco Constructors, Inc.,* 986 F.2d 115, 118 (5th Cir.1993).

We will not overturn the verdict of a jury unless it is not supported by substantial evidence. *Guthrie v. J.C. Penney Co., Inc.,* 803 F.2d 202, 207 (5th Cir.1986). Our role in "reviewing a claim of insufficient evidence in an age discrimination case remains the same as that in any other case: to determine whether the record contains evidence upon the basis of which a reasonable trier of fact could have found as the jury did." *Burns v. Texas City Refining, Inc.,* 890 F.2d 747, 750 (5th Cir.1989). With this in mind, we now turn to the evidence presented in this case.

D

The evidence in this case may be evaluated in three steps: (1) evidence of Lincoln's motive when it replaced Atkin on July 20, 1987; (2) evidence of Lincoln's motive when it formally terminated his employment on August 24, 1987; and (3) evidence of Lincoln's motive at other times during Atkin's employment. We will examine the sufficiency of Atkin's evidence at each of these three stages to determine if a reasonable trier of fact could have concluded that age was a determinative factor in Lincoln's ultimate decision to terminate his employment.

The first relevant date is July 20, 1987, the day Lincoln hired an employee to fill Atkin's position. We must ask if Atkin presented any evidence to demonstrate that, in making this employment decision, Lincoln was motivated by a desire to replace him because of his age. As discussed earlier, during the sixty days Atkin was on medical leave and for an additional twenty days, Lincoln made every effort to keep his position open for him. The unrefuted evidence shows that Lincoln was pulling employees from other divisions to give several hours of their time to make up for

the opening necessitated by Atkin's absence. This situation required maintenance persons to leave their regular positions unattended to serve a few hours at Atkin's position. The evidence further shows that this practice ultimately resulted in Lincoln's failure to meet fully the maintenance needs of its tenants. Thus, after Atkin had been absent some eighty days, Lincoln decided to hire an employee to fill his position. At this time Atkin had not provided Lincoln with any date of when he would be able to return to work—and indeed, did not do so until August 19. Furthermore, Atkin presented no evidence to refute that Lincoln was experiencing maintenance difficulties because of his extended absence. Although Atkin did present evidence that there was no work surge in July of 1987, this evidence does not address the undisputed fact that the maintenance needs continued to require at least the services of the position that Atkin had filled. In short, Atkin presented no evidence that Lincoln's decision to hire an employee on July 20, 1987 to fill his position was in any way motivated by any factor other than business necessity.

The second relevant date is August 24, 1987, the day Lincoln formally terminated Atkin. Again, we must ask whether Atkin presented any evidence to demonstrate that this decision was motivated by Atkin's age. When Atkin told Lincoln on August 19, 1987 that he would be returning to work on August 24, Lincoln did not tell him that he had been replaced; instead, it made an effort to locate a position for him. When Atkin returned on August 24, the undisputed evidence is that Lincoln had no openings. Atkin produced no evidence that age might have entered into Lincoln's decision or that Lincoln's stated reason—no openings—was a pretext. Thus, no reasonable trier of fact could, on this evidence, conclude that Atkin's age was a determinative factor in Lincoln's decision on August 24.

Finally, we must ask whether any other evidence was presented by Atkin from which a jury could conclude that Lincoln's decisions on July 20 or August 24, respectively, were motivated by Atkin's age. In this regard, Atkin points to events that occurred in the fall of 1986. In October of that year, Lincoln concluded that Atkin could no longer adequately perform the duties that previously had been assigned to him. Lincoln demoted him, cut his salary, and transferred him to a different position. Atkin states that before demoting him Lincoln told him that he was "getting up there in

years" and that it would be a good idea for him to retire.[2]  The record before us shows, however, that Atkin never contested or even complained of this demotion to Lincoln, or to the EEOC, or in his court complaint.  A single event that occurred almost one year before Atkin's discharge and of which he never complained, standing in isolation with no bridge to connect it to the decisions in question, is not probative of Lincoln's motives one year later.  Even if we were to assume age-related comments were made at the time Atkin was demoted, when such "comments are vague and remote in time and administrative hierarchy, they are no more than stray remarks, which are insufficient to establish discrimination." *Turner v. North American Rubber, Inc.,* 979 F.2d 55, 59 (5th Cir.1992);  *see also Guthrie v. Tifco Industries,* 941 F.2d 374, 379 (5th Cir.1991), *cert. denied,* --- U.S. ----, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992) (statements made one year before demotion held too vague and remote in time to establish discrimination).  In addition, Atkin offered no evidence that he was in fact physically able to continue the duties that were taken from him.  After Atkin's demotion he remained employed by Lincoln for almost a year during which time Lincoln made no efforts to discharge him.  Furthermore, during this time no events or conversations raised the question of Atkin's age.  Atkin also took two medical leaves with Lincoln's approval, the second of which Lincoln allowed him to extend by fifty-five days.  Even when Atkin returned from his leave after being away from work for 115 days, Lincoln still attempted to find a position for him.  Each of these subsequent events simply underscore that the 1986 incident is not probative of whether age was a factor in unrelated decisions occurring in 1987.

V

In summary, we conclude that no reasonable factfinder could infer from the evidence that Lincoln's motivation in discharging Atkin was his age.  As such, the verdict of the jury is not supported by sufficient evidence, and the district court should have granted Lincoln's motion for judgment as a matter of law.  We therefore reverse the judgment of the district court and remand for entry of judgment in favor of Lincoln.

---

[2]The Lincoln employee who allegedly made these comments denied ever suggesting to Atkin that he retire.

REVERSED AND REMANDED FOR ENTRY OF JUDGMENT.