United States Court of Appeals,

Fifth Circuit.

No. 94-60087.

Carlton E. LEATHERWOOD, Jr., Plaintiff-Appellant,

v.

HOUSTON POST COMPANY, Defendant-Appellee.

Aug. 1, 1995.

Appeal from United States District Court for the Southern District of Texas.

Before POLITZ, Chief Judge, EMILIO M. GARZA and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Plaintiff Carlton Leatherwood, Jr., filed suit against his employer, the Houston Post Company, alleging violation of ERISA, 29 U.S.C. § 1101 *et seq.,* and violation of the Texas Commission on Human Rights Act, Tex.Rev.Civ.Stat.Ann. art. 5221k (Vernon 1987 & Supp.1993) (repealed and recodified as Tex.Labor Code § 21.001 *et seq.*) (hereinafter referred to as "TCHRA"). The district court severed the two claims and set the pendent state claim for jury trial. After a jury verdict in favor of Leatherwood, the district court entered partial final judgment in favor of the Houston Post. Leatherwood appeals the district court's judgment on his state claim under the TCHRA. We affirm.

FACTS

Leatherwood suffers from bipolar disorder and experiences cyclical psychotic episodes of both mania and depression. He worked for the defendant, the Houston Post (the Post) from 1967

1

until he was terminated in July of 1989. Between 1976 and 1989, he was hospitalized periodically due to his mental disorder. Each hospitalization was preceded by a change in Leatherwood's behavior and thinking. It appears that over the years Leatherwood's disorder has been controlled with medication. Leatherwood underwent an involuntary hospitalization in December of 1988 which lasted about two weeks and was preceded by at least one month of manic behavior during which he tendered his resignation. He returned to work in January of 1989 and was informed that his resignation would be accepted, effective sometime in March 1989. The effective date was extended and Leatherwood was still employed with the Post when he entered another manic period in May 1989. Leatherwood was hospitalized in June of 1989, and his employment with the Houston Post was terminated effective July 12, 1989.

Leatherwood filed suit against the Post, alleging that it had discriminated against him on the basis of his disability. Leatherwood claims that his disorder did not affect his ability to perform the job and that, prior to new management which took over in the fall of 1988, the Post reasonably accommodated his disorder. He claims that the new management had a lower tolerance for his illness. After trial, a jury found that (1) Leatherwood's mental disability did not unreasonably impair his ability to perform his job, and that (2) his mental disability was the determining factor in the Houston Post's decision to discharge him. The Post filed a

2

Motion for Judgment Notwithstanding the Verdict.[1]

The district court found that the evidence of past accommodation shed no light on the ability of the Post to accommodate Leatherwood's disability during the time period which more immediately preceded his dismissal. The district court also noted that uncontroverted evidence shows that Leatherwood was impaired from effectively performing his job for at least four of the nine months immediately preceding his termination,[2] and concluded that, as a matter of law, such an impairment is unreasonable. The court found that the evidence is likewise uncontroverted that Leatherwood was an acceptable and perhaps even a very good writer who could meet deadlines when he was well and unaffected by his illness, but that he was *not* capable of performing his job during the more severe psychotic episodes of his bipolar illness. Due to the uncontroverted effect of Leatherwood's disability on his job performance, the district court granted the Post's motion and entered judgment as a matter of law in favor of the Houston Post and against Leatherwood. Leatherwood appeals, asserting that the evidence supported the jury verdict and that, therefore, the district court erred in entering the judgment against him.

---

[1]Although the parties and the district court refer to this motion as "Judgment Notwithstanding the Verdict" we shall refer to it herein as "Judgment as a Matter of Law", which is now the proper terminology pursuant to Fed.R.Civ.P. 50.

[2]At oral argument, Leatherwood's counsel contended that he was impaired from effectively performing his job for *three* months rather than four.

STANDARD OF REVIEW

We review the district court's ruling on the motion for judgment as a matter of law to determine whether a reasonable trier of fact could conclude that Leatherwood's mental disability did not unreasonably impair his ability to perform his job, and that his mental disability was the determining factor in the Houston Post's decision to discharge him. *See Atkin v. Lincoln Property Co.,* 991 F.2d 268, 270 (5th Cir.1993). When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage is unimportant; we focus our inquiry on whether the record contains evidence upon which a reasonable trier of fact could have concluded as the jury did. *Id.,* at 271 (citation and internal quotation marks omitted). A mere scintilla of evidence is insufficient to present a question for the jury. The motions for judgment as a matter of law should not be decided on the basis of which side has the better of the case, nor should it be granted only when there is a complete absence of probative facts to support a jury verdict; there must be a conflict in substantial evidence to create a jury question. *See Tutor v. Ranger Ins. Co.,* 804 F.2d 1395, 1397 (5th Cir.1986), *citing Boeing Co. v. Shipman,* 411 F.2d 365, 374-75 (5th Cir.1969) (en banc).

In reviewing a district court's disposition of a motion for judgment as a matter of law, we employ the same standard as the district court to determine whether sufficient evidence exists to support the jury verdict. *Portis v. First National Bank of New Albany, Miss.,* 34 F.3d 325, 327 (5th Cir.1994), quoting *Little v.*

4

*Republic Refining Co.,* 924 F.2d 93, 95 (5th Cir.1991); *Atkin* at 270. Considering all the evidence in the light and with all reasonable inferences most favorable to the party opposed to the motion, that standard is as follows: "If the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict," the court should enter judgment as a matter of law. *See Portis,* at 328, and *Atkin* at 270, each quoting *Boeing Co. v. Shipman,* 411 F.2d at 374.

## DISCUSSION

Leatherwood argues that the testimony and other evidence showed by a preponderance that his disability did not impair his ability to perform his job. He cites testimony by his supervisors, co-workers, and psychiatrist, which indicates that his work was acceptable, comparable to that of others, and that the hospitalizations were no more of an inconvenience to the Houston Post than if he had a long vacation.[3] By contrast, the Post asserts that Leatherwood failed to prove that his disability did not impair his ability to reasonably perform his job as copy

---

[3]Leatherwood also contends that the district court should not have considered, or accorded great weight or deference to, the SSA determination that he was disabled prior to his discharge. However, he does not challenge the admissibility of either the testimony or other evidence about the SSA determination. Nevertheless, we note that the record reveals that Leatherwood's counsel questioned Leatherwood's psychiatrist about the SSA determination. Moreover, both the evidence and the district court's memorandum indicate that the SSA determination was neither (1) dispositive of the district court's judgment, nor (2) the sole evidence regarding Leatherwood's ability to perform his job duties.

editor, or to perform the duties of another available position, at the time of his discharge.

Under the TCHRA, it is unlawful for an employer to discharge an individual or otherwise to discriminate against an individual with respect to compensation or the terms, conditions, or privileges of employment because of disability.[4] We have observed that the term "because of disability" refers to discrimination because of or on the basis of a physical or mental condition that does not impair an individual's ability to reasonably perform a job, and that this definition is similar to the "otherwise qualified" requirement under section 504 of the Rehabilitation Act.[5] *See Chiari v. City of League City,* 920 F.2d 311 (5th

---

[4]We note that, prior to its recodification, the TCHRA did not expressly impose an accommodation requirement. *See Chiari v. City of League City,* 920 F.2d 311, 319 (5th Cir.1991). We also note that Leatherwood has not shown either that he requested any specific accommodation, or what specific accommodation would have "worked" during his manic episodes (other than having someone else perform the duties which he either could not or did not perform). It is for this reason that we do not address Leatherwood's arguments regarding the Post's failure or refusal to continue accommodating his disability in 1989.

[5]In reviewing a case brought pursuant to the TCHRA, the court may look not only to relevant provisions of the state statute, but when necessary, also to analogous federal provisions contained in Title VII. *Daniels v. Allied Elec. Contractors Inc.,* 847 F.Supp. 514 (E.D.Tex.1994).

In the context of federal law, our colleagues of the District of Columbia Circuit have observed the following: Unlike a person's race, an employer may legitimately take a disability into consideration in determining whether an applicant or employee is qualified for a particular position. *See Barth v. Gelb,* 2 F.3d 1180, 1186 (D.C.Cir.1993), *cert. denied sub nom. Barth v. Duffy,* --- U.S. ----, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994). Three categories of disability discrimination cases that may be brought under § 501 of the Rehabilitation Act, 29 U.S.C.A. §

6

Cir.1991), and the cases and statutes cited therein.

The instant case involves a jury's specific determination that there has been disability-based discrimination against an employee whose disability did not impair his ability to reasonably perform his job. There is no question but that Leatherwood could reasonably perform his job when his mental health was stable. However, this specific finding by the jury does not address the question of whether Leatherwood's disability impaired his job performance *during* his psychotic episodes versus during the times when there was no manifestation of his mental disability. The jury was not asked to make this distinction.

Historically, each of Leatherwood's manic episodes lasted for several weeks prior to a hospitalization which would also last for several weeks. Leatherwood's psychiatrist, Dr. Archie Blackburn, testified that a manic episode is an "episode that results in substantial inability to either work or carry on social relationships." The June 1989 episode was hypomanic—less severe

791, are (1) where the employer asserts that its challenged action was done for reasons unrelated to the employee's disability; (2) where the employer challenges a employee's claim that he is an "otherwise qualified" person who, with "reasonable accommodation, can perform the essential functions of the position in question"; and (3) where the employer offers the affirmative defense of "undue hardship" on the operation of its program, in which the employer contends that the accommodation required is unreasonable. *See and compare, Barth, id.*

In the instant case, the parties agree that Leatherwood is disabled and was discharged for reasons related to his disability. The parties disagree about whether Leatherwood could perform the functions of his position either with or without reasonable accommodation.

7

than a manic episode. The uncontroverted pre-hospitalization effects of Leatherwood's 1988 manic episode included increased absences from work, reduced accuracy, reduced production, increased confusion, and general unreliability.[6] Similarly, it is uncontroverted that his pre-hospitalization 1989 hypomanic episode affected Leatherwood's memory, judgment, and work product. Of the many plaintiff's witnesses who testified about Leatherwood's ability to work in various positions with the Post, only a few worked with the Post during his November-December 1988 and June 1989 episodes. These witnesses neither supervised nor worked with Leatherwood on a day to day basis during the 1988-1989 episodes, and their testimony does not controvert the Post's evidence that prior to each of the last two hospitalizations Leatherwood could not perform his job duties for several weeks either due to absences or because his judgment was affected by his disability such that his work had to be either closely scrutinized, or actually performed, by others. Leatherwood himself did not recall much of what occurred during the manic or hypomanic period which preceded each of these two hospitalizations. In the last year of his employment, each pre-hospitalization psychotic episode lasted anywhere from three to eight weeks.

Assuming as true all the testimony and other evidence that is favorable to Leatherwood, the record does not indicate that he

---

[6]Leatherwood challenges the Post's assertion that he was occasionally belligerent prior to his hospitalization in December 1988, but concedes that he remembers little of what occurred during this pre-hospitalization manic episode.

could reasonably perform his duties during his pre-hospitalization psychotic episodes. The evidence reveals that during Leatherwood's employment in 1988 and 1989, when his illness was symptomatic, it affected his judgment and his ability to reasonably perform his duties with the Post for several weeks prior to the respective hospitalizations. In other words, the record supports a finding that Leatherwood's work was acceptable and comparable to that of others when his bipolar illness was asymptomatic, and that the hospitalizations were no more of an inconvenience to the Houston Post than if he had a periodic one to four week long vacation; but it does *not* support a finding that Leatherwood could reasonably perform his work during his psychotic episodes.

The district court observed that, periodically, Leatherwood was away from work due to his bipolar illness for a total of four months out of the last nine months of his employment with the Post. The district court determined that, as a matter of law, these absences were a part of the evidence which demonstrated that Leatherwood could not reasonably perform his job. Leatherwood concedes that during this time he was away from work for a total of about three months. Whether it was three months or four months, we agree that Leatherwood's disability-based absence from his job as an editor for this daily newspaper, for 33 to 44 percent of his last nine months of employment strongly indicates that, for the purposes of the TCHRA, his disability rendered him unable to reasonably work in this position as a matter of law.

Leatherwood makes much of a letter which his psychiatrist, Dr.

9

Blackburn, wrote to the Post in February 1989 which stated that Leatherwood could continue his usual work. The Post, on the other hand, emphasizes the content of another letter Dr. Blackburn wrote to the SSA in November 1989 which stated that Leatherwood had been "mostly, seriously disabled" since September 1988. Other physicians also testified about Leatherwood's condition. In light of our discussion in *Singletary v. Bowen,* 798 F.2d 818, 823 (5th Cir.1986) and *Leidler v. Sullivan,* 885 F.2d 291 (5th Cir.1989),[7] we make the following observations about the various opinions of whether Leatherwood's disability impaired his ability to perform his job as follows:

As noted above, the evidence demonstrated that, during

---

[7]We summarized *Singletary* in *Leidler,* 885 F.2d at 292-293 as follows:

> First, *Singletary* held that the twelve-month durational requirement for disability could be met in severe mental illness cases even though a claimant is able to work sporadically at a series of jobs....
>
> The second lesson of *Singletary* is that the Secretary must consider whether an applicant with a serious mental illness remains able to engage in substantial gainful activity when, although he is capable of performing work, he cannot maintain regular employment.

We emphasize that neither *Singletary* nor *Leidler* is an employment discrimination case. We refer to these cases herein solely for the purpose of demonstrating one way in which an employee can be capable of performing a job, in general, and yet at the same time have a disability which is either seriously disabling or which impairs the employee's ability to continuously or reasonably perform that job. When viewed in this context, the instant conflict over whether Leatherwood was able to perform the duties of his job with the Post is more apparent than real. *See and compare, Singletary,* 798 F.2d at 823.

manifestations of his mental disability, Leatherwood was unable to function reasonably in the position from which he was terminated. *See and compare, Chevron Corp. v. Redmon,* 745 S.W.2d 314, 318 (Tex.1987) (noting that a person may not sue under the TCHRA if his disability impairs his ability to do that particular job). During his December 1988 manic episode, Leatherwood resigned. He returned to work in January 1989 on a temporary basis.[8] This temporary term was extended through the time which preceded his June 1989 hospitalization, and his employment was officially terminated in July 1989.

Even if we were to assume that the entirety of Leatherwood's version of the evidence is true, Leatherwood has not shown that he could reasonably perform his job duties during any of his manic episodes,[9] and particularly during any of the manifestations of his disability which occurred between September 1988 and June 1989.[10] Leatherwood admits that his work was affected when he experienced manic episodes. The jury was not asked to distinguish between Leatherwood's ability to perform his job when his illness was

---

[8]When he returned to work in January 1989, Leatherwood was informed that his resignation was accepted and effective in 60 days.

[9]During his pre-1988 manic episodes, it would become apparent to one or more of Leatherwood's co-workers or supervisors that his behavior had changed and Leatherwood would be hospitalized soon thereafter. There is no indication whether Leatherwood could reasonably perform his job duties during any period that was after this behavior change but before the resultant hospitalization.

[10]At most, Leatherwood has presented a scintilla of evidence that other employees made mistakes and he made no more mistakes than others.

symptomatic and when it was asymptomatic. The district court properly examined the evidence of Leatherwood's ability to perform his duties at the Post during his pre-hospitalization psychotic episodes as well as post-hospitalization stability. We agree that, as a matter of law, no reasonable jury could have found that Leatherwood's disability did not impair his ability to perform his job during the time periods which preceded hospitalization. Thus, Leatherwood was not entitled to relief under the TCHRA and we affirm the district court judgment.

CONCLUSION

For the foregoing reasons, the district court correctly determined that Leatherwood's disability impaired his ability to reasonably perform his job duties and that no reasonable jury could have concluded otherwise. Accordingly, the judgment of the district court is AFFIRMED.

12