EMILIO M. GARZA, Circuit Judge,
dissenting:
This case requires us to determine if the appellant, Daniel Watson, is entitled to disability and supplemental security benefits under the Social Security Act. 42 U.S.C. § 423(d). Specifically, we must decide whether the Secretary of Health and Human Services (the “Secretary”) applied the correct legal standard in concluding that Watson was capable of performing other work and therefore was not disabled. The majority, relying on our decision in Singletary v. Bowen, holds that the Secretary erred by not making a specific finding that Watson could maintain employment. 798 F.2d 818 (5th Cir.1986). In contrast to the majority, I believe that the Secretary was not required to make such a specific finding when evaluating Watson’s claim. Rather, in cases such as Watson’s, in *219 which the applicant alleges only a physical disability, the usual five-step sequential inquiry set forth in the federal regulations is the appropriate method to determine whether an applicant is capable of engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(b)-(f).
As the majority points out, the Secretary ordinarily evaluates disability claims under the five-step sequential process set forth in 20 C.F.R. § 404.1520.[1] At issue here is the Secretary’s application of the fifth step in that inquiry, which asks whether the impairment prevents the applicant from performing any substantial gainful activity other than his or her original employment. In determining whether the claimant can do any other work under the regulations, the Secretary considers the claimant’s residual functional capacity, together with his age, education, and work experience, according to the Medical-Vocational Guidelines. See 20 C.F.R. § 404.1561. Using these criteria, the Secretary found that Watson possessed the requisite residual functional capacity to perform jobs that required a medium level of work.[2] The regulations define medium work as work that “involves lifting of no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.” 20 C.F.R. § 416.967(c) (emphasis added). Thus, the Secretary specifically found that Watson could frequently lift up to 25 pounds and, on occasion, lift as much as 50 pounds. Based in part on this determination, the Secretary concluded that Watson was physically capable of performing other types of substantial gainful activity that required medium or less strenuous work levels.
The majority reasons that the Secretary should have then determined, in addition to the findings required under the regulations, that Watson could maintain an employment position requiring a medium level of physical exertion. In support of their argument, they rely on our decision in Singletary. Singletary involved a disability applicant who was suffering from a variety of serious mental illnesses, including schizophrenia, delusions, and an antisocial personality disorder. The Secretary applied the five-step process under the regulations and found that Singletary was not disabled. Singletary, 798 F.2d at 820. We reversed the Secretary’s determination, holding that he must consider whether an applicant with a serious mental illness is capable of engaging in substantial gainful activity when, although physically capable of working, he or she cannot maintain regular employment. Id. at 823.
The majority’s application of Singletary in the context of a physical disability case is misplaced. The applicant in Singletary suffered from mental illnesses. Thus, even though he possessed the residual functional capacity to perform certain types of work, his mental disability precluded him from working for any extended period of time. We concluded that usual five-step inquiry under the regulations, which focuses primarily on physical disabilities, did not adequately address a *220 mental disability. Thus, we held that an additional determination that the applicant could maintain employment was necessary. In doing so, we acknowledged the limitations in the regulations in evaluating mental disability claims:
Determining whether a claimant is disabled because of a mental condition under the above sequential process can be a difficult task. In some cases, the mental impairment may be so severe that the claimant is presumed to be incapable of working.... Quite often, however, the claimant is capable of finding a job and working for short periods of time. The nature of the mental impairment is such, however, that the claimant is unable to remain employed for any significant period of time.
Singletary, 798 F.2d at 820-821 (internal citation omitted). Singletary’s requirement that the Secretary must make a specific additional finding that a disability applicant with a mental illness is able to maintain employment in order to be capable of engaging in substantial gainful activity was intended to address the difficulties arising when applying the regulations to a mentally disabled applicant. Because the residual function inquiry focuses on an applicant’s physical capabilities and not on any mental disabilities, we concluded that an additional inquiry was necessary to address such cases.
Here, however, Watson only asserts a physical disability. The residual function determination made by the Secretary adequately deals with such claims. The Secretary found, based on substantial evidence, that Watson retained the residual functional capacity, in spite of his disability, to lift 50 pounds at any one time and to lift frequently up to 25 pounds. The Secretary’s physical disability determination, therefore, includes a determination that Watson was both physically capable of performing medium work and of maintaining a job requiring a medium level of physical exertion over an extended period of time. Thus, it would be redundant to require the Secretary to make an additional finding that Watson was physically capable of maintaining employment beyond the determination that he was physically capable of frequently lifting up to 25 pounds.
This distinction between mental and physical disabilities is not a distinction without a difference as the majority contends. An applicant with a mental illness may be physically capable of performing certain jobs, but yet ultimately unable to engage in substantial gainful activity. Here, however, the Secretary’s determination that Watson retained the residual functional capacity to frequently lift 25 pounds means that he is physically capable of engaging in that type of substantial gainful activity. No additional determination is necessary. The concerns that motivated our decision in Singletary are not present in the context of a physical disability claim.
The majority also relies on our decision in Wingo v. Bowen for the proposition that the Secretary was required to make an additional finding that Watson could maintain employment. 852 F.2d 827 (1988). In Wingo, the Secretary determined that the disability applicant was qualified to perform sedentary work. We concluded that the Secretary had failed to consider the applicant’s other, non-exertional limitations in reaching his conclusion that the applicant was not disabled. We stated: 'When making his determination that Wingo could perform gainful employment, the Secretary failed to consider this combination of impairments, and we cannot say therefore that this decision was supported by substantial evidence.” Thus, Wingo stands solely for the proposition that the Secretary must consider all of a disability *221 applicant’s physical and mental limitations when determining whether he or she can engage in substantial gainful activities.
The majority focuses on dicta in Wingo, arguing that it applies Singletary’s requirement that the Secretary make a specific finding that a disability applicant can maintain employment when evaluating a physical disability claim. In Wingo, the Secretary determined that the applicant could sit for as many as six hours. Based on this evidence, the Secretary concluded that the applicant could perform sedentary work. We stated that “[t]his particular capability would qualify Wingo to perform sedentary work only in a theoretical sense, however. To be capable of performing sedentary work under the guidelines, an individual must have some reasonable chance in the real world of being hired and, once hired, of keeping the job.” Wingo, 852 F.2d at 831. The regulations define sedentary work as work which “involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although sedentary work is defined as work which involves siting, a certain amount of walking and standing is often necessary in carrying out job duties.” 20 C.F.R. § 416.967(a). We concluded in Wingo that a finding that an applicant can sit for up to six hours does not satisfy the definition of sedentary work in the regulations. Rather, the definition of sedentary work includes a finding that the applicant can sit, carry small objects, stand, and walk on a daily basis. We did not fault the Secretary for failing to make an additional finding that the applicant could not maintain employment. Instead, we noted that the Secretary had failed to apply the regulations properly in reaching his or her conclusion. Thus, “the Secretary’s determination that [the applicant] can perform these [sedentary] jobs [was] mere speculation.”[3] Id. (citing Fields v. Bowen, 805 F.2d 1168, 1171 (5th Cir.1986)).
In this instance, however, the majority concedes that the Secretary’s determination that Watson was able to perform medium labor was supported by substantial evidence. In other words, the Secretary correctly applied the regulations, concluding that Watson could perform jobs which required him to frequently lift up to 25 pounds. The dicta in Wingo, which neither mentions Singletary nor requires any additional findings beyond what is required in the regulations, mandates only that the Secretary comply with the requirements of the regulations.
Finally, the majority relies on an Eighth Circuit decision to support its extension of our holding in Singletary. Dix v. Sullivan, 900 F.2d 135 (8th Cir.1990). In Dix, the disability applicant suffered from Crohn’s disease, an inflammatory disease affecting the gastrointestinal tract. Crohn’s disease is characterized by periods of inactivity in which the patient is relatively symptom free, followed by periods of severe pain. Dix, 900 F.2d at 135. Like Singletary, the court in Dix confronted a specialized case where the regulations failed to adequately address the disabilities of a particular applicant. Similar to an applicant with a mental illness, Dix was *222 physically able to obtain employment during her remissions, but was unable to work during her relapses. Thus, the Dix court concluded that the Secretary’s residual function determination under the regulations was insufficient because the applicant had no realistic chance of retaining work. Dix extends Singletary to the context of physical disabilities, but only to those disabilities which periodically affect an applicant’s physical ability to work. This extension is inapplicable to the facts of this case, however, because Watson suffers from back pain and degenerative disc disease. These afflictions, unlike Crohn’s disease or a mental illness, directly impede an applicant’s physical ability to perform certain types of work. The residual function inquiry directly addresses these types of limitations and an additional inquiry is unnecessary.
The majority’s decision represents an unnecessary extension of our decision in Singletary to the context of physical disabilities. The federal regulations governing the determination of an applicant’s residual functional capacity already provide the appropriate method for evaluating physical disability claims. The application of Singletary to cases such as Watson’s is redundant and only tends to confuse an already complicated regulatory process without affording deserving applicants any extra protections.
For the foregoing reasons, I would AFFIRM the judgment of the district court.

. The five steps are: (1) whether the claimant is not presently working, (2) whether the claimant has a severe impairment, (3) whether the impairment is not listed in, or equivalent to, an impairment listed in Appendix 1 of the regulations, (4) whether the impairment prevents the claimant from doing past relevant work, and (5) whether the impairment prevents the claimant from doing any other substantial gainful activity. Hampton v. Bowen, 785 F.2d 1308, 1311 (5th Cir.1986).

. The majority concedes in their opinion that the Secretary’s determination that Watson was capable of performing jobs that required medium work was supported by substantial evidence.

. The majority opinion sets up a straw man by arguing that Singletary cannot be limited to cases only involving a mixture of exertional and non-exertional limitations as in Wingo. This argument ignores the import of the Win-go decision. Wingo held that the Secretary must consider all of the claimant’s disabilities when making his disability determination. It then argued in dicta that the Secretary must properly apply his or her own regulations. Thus, the distinction between exertional and non-exertional limitations that the majority draws does not address the basic fact that Wingo does not represent an extension of Sin-gletary to the context of physical disabilities altogether.