**Annie WINGO, Plaintiff–Appellant,**

v.

**Otis R. BOWEN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

**No. 88–4156**
**Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Aug. 19, 1988.

Laurel G. Weir, Thomas L. Booker, Philadelphia, Miss., for plaintiff-appellant.

George Phillips, U.S. Atty., Pshon Barrett, Jackson, Miss., for defendant-appellee.

Before REAVLEY, KING and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Annie Wingo challenges the denial of social security disability benefits by the Secretary of Health and Human Services ("Secretary"). Because we find that the denial of benefits was not based on substantial evidence, we reverse the district court's decision and remand the case for further administrative hearings consistent with this opinion.

I

In 1977, Annie Wingo, a thirty-two-year-old female with an eleventh-grade education, was forced to quit her job because of problems from hyperkeratosis, an inherited, chronic skin affliction which causes painful growths on the body. Initially, Ms. Wingo's keratosis was limited to growths on the soles of her feet, making it extremely painful for her to stand or walk. Some of these callouses were removed from her heels in 1975 and replaced with skin grafts. Unfortunately, the procedure was not successful, and as a result Ms. Wingo had to give up her job as a sewing machine operator at Allied Rehabilitation Center. She applied for social security benefits at that time, and on August 29, 1978, an administrative law judge ("ALJ") ruled that she was totally disabled under the terms of the Social Security Act ("Act") and granted benefits for her.

In 1983, the Secretary informed Ms. Wingo that she must undergo a routine reevaluation of her disability. At that time, in addition to the disabling foot injuries caused by the same keratosis, she claimed that she suffered from severe headaches, shortness of breath, vertigo, menstrual problems, and a peptic, or bleeding, ulcer. She also asserted that the keratosis had spread to her hands.

The Secretary's review of Ms. Wingo's claim was based upon reports from two doctors, Dr. Ruby Moy and Dr. James Lewis. Dr. Lewis examined Wingo on May 7, 1982, and his report stated that she contin-

ued to be symptomatic of keratosis, that a second skin graft should be considered, and that the impairment affected Wingo's ability to work. Dr. Moy's report noted Wingo's complaint that she could not stand for long periods and was forced to remain in bed on some days, and that callouses in her hands were painful and prevented her from using her hands. Moy's examination noted that the keratosis on Wingo's feet was only slightly tender and not swollen at the time of the examination, and the mild keratosis on the palms appeared not to be tender at all. Moy also indicated that Wingo successfully squatted and heel-and-toe walked during the examination. Based on this information, the Secretary denied benefits.

Wingo then requested a hearing before the ALJ in which additional evidence was submitted. In an interview with a social security administrator, it was observed that she walked with obvious pain and had small callouses on her hands. Wingo's treating physician, Dr. Truly, stated in his letter to the Secretary that the lesions on Wingo's feet prevented any significant standing, walking or lifting. Wingo presented a medication list containing four types of prescription medications for colds, vertigo, infection and pain, and nine non-prescription drugs that she took for various ailments, including foot pain, menstrual pain, headaches, ulcer treatment and colds. She had also previously been treated for bronchitis and acute sinusitis. A final consultative examination was also performed in August 1984 by Dr. John D. Wofford. This examination revealed that, in addition to hyperkeratosis of the palms and soles, Wingo suffered from "constitutional symptoms, vertigo, menstrual irregularities, suggestion of abdominal mass, goiter with a galactorrhea tremor, and possible chronic urinary tract infection." Dr. Wofford noted that Wingo had declined an offer of surgery on the callous formations on her feet, but still appeared to have considerable foot pain while standing and walking. In Dr. Wofford's opinion, the callouses of the hands, however, did not interfere with manipulation or manual dexterity.

At the hearing, both Wingo and her mother testified. Wingo stated that she does not drive a car, cannot walk more than half a block, cannot lift anything heavier than her purse, cannot help with the shopping or housework in any way, and spends the bulk of the day watching television or reading. She noted that the keratosis made using her hands painful, and that she had a bleeding ulcer, which was controlled by medication. Her mother's testimony verified Wingo's report.

Nevertheless, the ALJ concluded that although Ms. Wingo's ability to stand or walk was severely limited, she would be able to sit to perform sedentary work. He relied upon the vocational guidelines promulgated by the Secretary to determine that this type of work was readily available in the national economy and that Wingo therefore could not qualify for disability benefits.

After exhausting her administrative remedies, Wingo appealed to the United States District Court. The district judge adopted the magistrate's findings and denied relief. Wingo now appeals that decision.

## II

Our review of the administrative findings under the Act is limited to whether the decisions are supported by substantial evidence on the record as a whole, and whether the Secretary applied the proper legal standards in reaching his decision. *Strickland v. Harris*, 615 F.2d 1103, 1108 (5th Cir.1980).

The Secretary evaluates disability claims under the Act through a five-step process, delineated in 20 C.F.R. § 404.1520 (1986), considering whether: (1) the claimant is currently working; (2) the impairment can be classified as nonsevere; (3) the impairment meets the duration requirement of 42 U.S.C. § 423(d)(1)(A), and is listed or medically equivalent to an impairment in Appendix I; (4) the claimant can perform her past relevant work; and (5) the claimant can perform any other gainful jobs. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir.1986). In this case, the only issue on

appeal is whether Wingo meets the requirements of step (5) in the process; that is, whether Wingo is able to perform substantial gainful employment. The Secretary held, and the district court affirmed, that despite her inability to stand or walk, Ms. Wingo would be able to perform sedentary work.[1] The Secretary used the medical-vocational guidelines listed at 20 C.F.R. Pt. 404 subpart P, Appendix II, Table 1, to determine that, given Wingo's exertional ability, age, education and work experience, there were a number of jobs that she could perform in the national economy and that she is not disabled. Wingo now claims that it was improper for the Secretary to rely upon the medical-vocational guidelines given the combination of nonexertional impairments which she has, and, therefore that the Secretary's decision was not based upon substantial evidence. We believe that Wingo's claim has merit.

### III

As a preliminary matter, we fully acknowledge the wide range of discretion given the Secretary to make disability determinations and our limited role in reviewing those decisions. "The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ, who has had an opportunity to observe whether the person seems to be disabled." *Loya v. Heckler,* 707 F.2d 211, 215 (5th Cir.1983) (citations omitted). As a trier of fact, the ALJ is similarly charged with the responsibility and discretion to determine just what weight to give to conflicting evidence presented at the hearing. *See Loya v. Heckler,* 707 F.2d at 214. On the other hand, our role on judicial review is limited by 42 U.S.C. § 405(g) to determining

"whether there is substantial evidence in the entire record to support the fact findings or decision of the Secretary, as the trier of facts, and not to reweigh the evidence or try issues de novo or substitute the judgment of the court for that of the Secretary." *Hames v. Heckler,* 707 F.2d 162, 164 (5th Cir.1983) (citations omitted). Thus the question we now consider is whether substantial evidence supports the Secretary's findings that Annie Wingo is capable of performing substantial gainful employment available in the national economy.

■ As this circuit has previously held, where an individual is subject to a composite of exertional and nonexertional or environmental limitations, the Secretary must evaluate the extent to which her work capability is diminished because her condition precludes her from performing some of those enumerated jobs. *Dellolio v. Heckler,* 705 F.2d 123, 127 (5th Cir.1983). In making this determination, the Secretary must consider a claimant's subjective symptoms as well as objective medical evidence. *Loya v. Heckler,* 707 F.2d at 214.

■ In this case, however, the Secretary based his decision that Wingo was qualified to do sedentary work only upon consideration of the medical evidence of hyperkeratosis of the feet, goiter, and possible galactorrhea tremor. In doing so, he failed to consider evidence, subjective or otherwise, of the other conditions of which Wingo complains and which the record reflects. In addition to the ailments that the Secretary held were supported by medical evidence, Wingo claims to suffer from vertigo, exertional difficulties, headaches, menstrual cramps, and chronic bronchitis.[2]

---

1. "Sedentary work" is defined in 20 C.F.R. § 404.1567(a) as work which

   involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

2. The Secretary argues that Wingo's nonexertional and subjective claims should be discounted simply because the symptoms were not observed by the ALJ when she was on the stand. The fact that an applicant does not appear to be experiencing severe pain or other symptoms at the hearing is not substantial evidence from which to make a disability determination, however. "The issue is not how much pain [the individual] suffers when he is at rest. The relevant question is how much pain he experiences when trying to work. [The individual's] de-

Moreover, her and her mother's testimony indicated that she was not even capable of performing simple housekeeping chores on a sustained basis. The existence of most of these ailments is supported by Wingo's own testimony, the testimony of other witnesses, as well as reports by consulting examiners, treating physicians, and hospital records. When making his determination that Wingo could perform gainful employment, the Secretary failed to consider this combination of impairments, and we cannot say therefore that his decision was supported by substantial evidence.

█ Given the record before us, we do not dispute the finding that Wingo is capable of sitting as many as six hours. This particular capability would qualify Wingo to perform sedentary work only in a theoretical sense, however. To be capable of performing sedentary work under the guidelines, an individual must have some reasonable chance in the real world of being hired and, once hired, of keeping the job. "A claimant capable of performing sedentary or light work under the guidelines must have the ability to perform the required physical acts day in and day out in the sometimes competitive and stressful conditions in which all people work in the real world." *Allred v. Heckler*, 729 F.2d 529, 533 (8th Cir.1984).

As we held in *Fields v. Bowen*, 805 F.2d 1168 (5th Cir.1986), even where an applicant may be technically capable of sedentary work, "the fact that [the applicant] may be able to inspect a pencil or lace a football does not necessarily mean that she can function as a pencil inspector or hand-lacer. The Secretary's determination that she can perform these jobs is mere speculation." *Id.* at 1171. In this case, the ALJ's mechanical application of the guidelines failed to consider the aggregate impact of her ailments.

█ For the foregoing reasons, therefore, we reverse the judgment of the district court denying disability benefits to Annie Wingo, and remand for further consideration in the light of, and consistent with, this opinion which, *inter alia*, may include an individualized determination of whether her ailments can be effectively remedied,[3] and for the Secretary's particularized determination, by use of a vocational expert or similar evidence,[4] whether, given the unique combination of exertional and nonexertional ailments suffered by Wingo, there are sufficient jobs in the national economy for which she is, in a realistic sense, qualified and capable of performing.

REVERSED AND REMANDED.

meanor at the hearing sheds little if any light on that question." *Lovelace v. Bowen*, 813 F.2d 55, 60 (5th Cir.1987).

3. The Secretary notes that Wingo has been offered and deferred surgery for her foot ailments. The ALJ, however, made no attempt to discover at the hearing just why treatment had been deferred. Wingo claims that she cannot currently afford it and it is not clear on this record whether Wingo qualifies for government assistance in meeting these costs. Although a medical condition that can be remedied by surgery or medication is not disabling, 20 C.F.R. §§ 404.1530(b) and 416.930(a), the Secretary must first determine that the reason for declining treatment was not justified by the inabil-

ity to pay or ineffectiveness of the treatment. When a claimant cannot afford prescribed treatment or medicine and can find no way to obtain it, "the condition that is disabling in fact continues to be disabling in law." *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir.1986).

4. As stated repeatedly in our prior decisions, when the guidelines are inapplicable, the Secretary must use the services of a vocational expert or present similar evidence to determine whether the applicant can be gainfully employed. In the absence of such testimony, the Secretary's decision that the claimant can perform a job lacks the substantial evidence required by law. *See Fields*, 805 F.2d at 1171 and cases cited therein.