**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 01-30714**

_____

**EVELYN FRANK,**

**Plaintiff-Appellant,**

**versus**

**JO ANNE B. BARNHART, COMMISSIONER**
**OF SOCIAL SECURITY,**

**Defendant-Appellee.**

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
_____

March 25, 2003

Before JONES, SMITH, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Appellant Frank seeks rehearing of our opinion that affirmed the Secretary's denial of disability benefits for her degenerative disc disease condition. She urges that our opinion conflicts with this court's recent decision in _Watson v. Barnhart_, 288 F.3d 212 (5th Cir. 2002). Because her claim raises questions as to the proper scope of _Watson_, we publish this order on rehearing, followed by our original (unpublished) opinion.

## ON PETITION FOR REHEARING

On petition for rehearing, Frank contends that in *Watson*, decided a week after the issuance of the opinion in her case, this court extended the *Singletary* decision[1] to require that in all disability cases the Commissioner must make a finding that a claimant is capable of sustained employment in order to defeat a disability claim. However, nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case.

Relying on *Singletary*[2] and *Wingo v. Bowen*,[3] and taking account of the particular and peculiar evidence before the ALJ, *Watson* required the ALJ to make a finding as to the claimant's ability to maintain a job for a significant period of time, notwithstanding the exertional, as opposed to non-exertional (e.g., mental illness) nature of the claimant's alleged disability. *Watson* requires a situation in which, by its nature, the claimant's physical ailment waxes and wanes in its manifestation of disabling symptoms. For example, if Frank had alleged that her degenerative disc disease prevented her from maintaining employment because

---

[1] *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986).

[2] *Singletary* echoes but did not cite changes in Social Security disability regulations made to liberalize the criteria for disability determinations in mental illness cases. *See Pagan v. Bowen*, 862 F.2d 340, 342-44 (D.C. Cir. 1988)(discussing regulatory changes). Whether the new regulations might have affected *Singletary* is a matter for speculation.

[3] 852 F.2d 827 (5th Cir. 1988)

2

every number of weeks she lost movement in her legs, this would be relevant to the disability determination.

At bottom, *Watson* holds that in order to support a finding of disability, the claimant's intermittently recurring symptoms must be of sufficient frequency or severity to prevent the claimant from holding a job for a significant period of time. An ALJ may explore this factual predicate in connection with the claimant's physical diagnosis as well as in the ability-to-work determination. Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment. Nevertheless, an occasion may arise, as in *Watson,* where the medical impairment, and the symptoms thereof, is of such a nature that separate consideration of whether the claimant is capable of maintaining employment is required.

Frank did not establish the factual predicate required by *Watson* to necessitate a separate finding in this regard.

For the foregoing reasons, Frank's petition for rehearing is **DENIED.**

**ORIGINAL OPINION**

3

Evelyn Frank appeals the district court's summary judgment against her in a lawsuit challenging the Commissioner of Social Security's decision to deny her disability benefits. *See* 42 U.S.C. § 405(g) (permitting applicants for disability benefits to bring a civil action challenging adverse administrative decisions). Frank claims that the administrative law judge (ALJ) who decided her application erred in three respects: (1) he failed to give proper weight to the opinion of her treating physician, (2) he failed to consider whether Frank could maintain employment for more than short periods of time, and (3) he relied on improper considerations in determining Frank's credibility.

**I**

Frank contends that, in evaluating the opinion of her treating physician, Dr. Zeringue, the ALJ did not consider each of the six factors set out for evaluating such evidence as required by 20 C.F.R. § 404.1527(d). *See Newton v. Apfel*, 209 F.3d 448, 456 – 58 (5th Cir. 2000) (requiring, in the absence of competing first-hand medical evidence, that the ALJ consider each of the § 404.1527(d) factors in evaluating the medical opinion of a treating physician). The controversy seems to focus on a note that Dr. Zeringue wrote by hand to the Social Security Administration. The entire text of the note reads:

> Pt. is under my medical care and has been since February 3, '94. She is unable to work because of cervical & lumbar strain/sprain & poss. intervertebral

disc injury. Left hand and left knee abrasion/contusion.
It is unknown when the pt. will be able to return.

Frank argues that this opinion should have been evaluating using each of the factors set out in § 404.1527(d) before being given "little weight" by the ALJ.

Assuming arguendo that the ALJ did not consider the six factors, he was not required to do so with respect to the doctor's conclusion that Frank was unable to work. The ALJ must consider the six factors in subsection (d) only with respect to the *medical opinions* of treating physicians. Subsection (d) is entitled "How we weigh medical opinions" and explicitly applies only to "medical opinions." Subsection (e) of the regulation expressly explains that some opinions by physicians are not medical opinions, and as such have no "special significance" in the ALJ's determination. 20 C.F.R. § 404.1527(e) & (e)(3). Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(e)(1). These determinations are legal conclusions that the regulation describes as "reserved to the Commissioner." The factors set out at subsection (d) apply only to medical opinions, not opinions "reserved to the Commissioner." Assuming arguendo that the ALJ did not consider the six factors in subsection (d), he was not required to do so with respect to Dr. Zeringue's opinion that Frank could not work. The doctor's opinion was not a medical opinion within the meaning of the regulation.

5

With respect to Dr. Zeringue's medical opinion, the ALJ did not reach any conclusions that conflicted with the doctor's evaluation. The ALJ specifically found that Frank suffered from, among other impairments, "degenerative disc disease at L5; a history of strains and sprains of the cervical and lumbar regions, and [of the] left hand and knee . . . ." The ALJ's findings of fact on Frank's medical condition therefore do not conflict with Dr. Zerengue's evaluation that Frank suffered from lumbar and cervical strain and left hand and knee abrasions.

## II

Frank contends that the ALJ erred in considering only whether she could obtain her past relevant work, not whether she could maintain such work on a sustained basis. She cites *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986), in which we held that a person qualifies as disabled under the act if he cannot sustain a job for a significant period of time, even if he is sometimes capable of working for short spurts. A person is disabled within the meaning of the Social Security Act if he is unable to do "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1527. In *Singletary*, the applicant suffered from a severe mental impairment. Although he could sometimes work for

6

short periods of time, he could never hold a job for long periods. We held that working in short spurts only did not constitute "substantial gainful activity" and that the applicant therefore might qualify as "disabled."

Here, nothing in the record suggests that Frank can work only in short spurts. Even Frank herself does not contend that her situation resembles Singletary's: she does not allege that she can work for short spans of time, but cannot hold a job. Instead, she just seems to contend that she cannot work at all. We therefore do not see how the ALJ committed any error under *Singletary*.

We suppose that Frank's *Singletary* argument is that the ALJ applied the wrong legal standard. Frank seems to argue that the ALJ must in every case articulate separate and distinct findings that the applicant can perform the incidents of a job *and* that he can maintain the job over a sustained period, even if the applicant does not contend that his situation resembles Singletary's. We reject this approach. *Singletary* simply interpreted "disability" under the Act to apply to cases in which a person could work for short periods, but could not hold a job. It did not require, as Frank seems to suggest, separate findings on "obtaining" and "maintaining" a job in every case, even cases in which the applicant does not suggest that there is any difference between the issue of his ability to work and his ability to sustain work.

7

Frank also contends that the ALJ relied on impermissible factors in assessing her credibility. Frank claimed that she would rather work, if she were able, than accept disability payments. The ALJ noted that, if this statement were true, it would lend support to her claim of disability. He decided that Frank's statement was not credible, however, at least in part because she was unemployed for five years even *before* she was injured. He reasoned that, if Frank really felt so strongly about wanting to work, she would have found some employment in the five years before she sustained injuries. Frank objects to this reasoning, arguing that her employment status prior to her injury is simply not relevant to the determination of her disability status.

Frank also points to language in the ALJ's decision in which he questions her credibility in light of the medical evidence. The ALJ seems to draw his own medical conclusions from some of the data, without relying on a medical expert's help:

> The undersigned finds it significant that despite allegations of disabling impairments since October of 1993, consultative examinations . . . revealed no evidence of atrophy. It would seem reasonable that disabling symptoms that allegedly preclude any significant walking, standing, sitting, lifting, and carrying would result in observable findings of atrophy or muscle tone loss . . . .

It would appear from this paragraph that the ALJ made his own medical conclusions about whether a patient would show signs of atrophy or muscle tone loss as a result of Frank's alleged

impairments.  The Seventh Circuit has, in several cases, warned ALJ's against "playing doctor" and making their own independent medical assessments.  For example, in *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir.1990), Judge Posner warned:

> But judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor. . . . The medical expertise of the Social Security Administration is reflected in regulations; it is not the birthright of the lawyers who apply them. Common sense can mislead; lay intuitions about medical phenomena are often wrong.

In *Schmidt*, a former executive claimed that he could not return to high stress executive positions because of a heart condition.  The executive nevertheless remained physically active and played handball for forty minutes a week.  The ALJ relied heavily on this fact in concluding that the executive was not disabled.  The Seventh Circuit rejected this reasoning, holding that the ALJ could not substitute his medical judgment for a doctor's.  Although common sense might dictate that a person who can play handball can hold down a job, common sense about medical matters is often wrong.

We decline to reach the merits of either of these two arguments, because, even if the ALJ made any error, the error would be harmless.  *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (applying harmless error analysis in disability benefits context).  The ALJ's twelve-page, single spaced opinion relies very little on his assessment of Frank's credibility.  Instead, the overwhelming factor in the decision was medical evidence from a

9

variety of sources indicating that Frank could indeed hold down her old job as a clerical worker.  It is inconceivable that the ALJ would have reached a different conclusion on this record, even had the ALJ accepted at face value Frank's statement that she would prefer to work.

We therefore AFFIRM the decision of the district court granting summary judgment in favor of the Commissioner.

**AFFIRMED.**