Sheila **WHITE**, Plaintiff,

v.

**Jo Anne B. BARNHART**, Commissioner of Social Security Administration Defendant.

No. 1:04 CV 724.

United States District Court, E.D. Texas, Beaumont Division.

June 6, 2006.

Steven S. Packard, Beaumont, TX, for Plaintiff.

Steven A. Ford, Anoka, MN, for Defendant.

## MEMORANDUM OPINION ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

CRONE, District Judge.

The Court heretofore ordered that this matter be referred to the Honorable Earl S. Hines, United States Magistrate Judge, for consideration pursuant to applicable law and orders of this Court. The Court has received and considered the Report of the United States Magistrate Judge pursuant to such order, along with the record, pleadings and all available evidence. No objections to the Report of the United States Magistrate Judge were filed by the parties.

Accordingly, the findings of fact and conclusions of law of the United States Magistrate Judge are correct, and the Report of the United States Magistrate Judge is ADOPTED. A Final Judgment will be entered separately, affirming the decision of the Commissioner and dismissing this action.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HINES, United States Magistrate Judge.

This case is referred to the undersigned United States Magistrate Judge for review, hearing if necessary, and submission of a report with recommended findings of fact and conclusions of law. *See* 28 U.S.C. § 636(b)(1)(B) (2001) and Loc. R. CV–72 & App. B, R. 1(H) for the Assignment of Duties to United States Magistrate Judges; *see also* Gen. Order 05–6.

### I. NATURE OF THE CASE

Plaintiff requests judicial review of the Commissioner of Social Security Administration's decision denying plaintiff's application for disability insurance benefits. United States district courts may review such decisions. 42 U.S.C. § 405 (2003).

### II. PROCEEDINGS

Plaintiff applied for disability insurance benefits (DIB)[1] claiming disability beginning July 10, 1998 (Tr. 58), due to "depression [and] anxiety" (Tr. 70). Following initial denial of her claim, plaintiff requested a hearing before an administrative law judge (ALJ) (Tr. 35). ALJ William B. Howard convened an evidentiary hearing on April 2, 2003. At the hearing, plaintiff was accompanied by a lay representative, Mark Walker. Tr. 306.

ALJ Howard received direct testimony from plaintiff and a vocational expert (VE), Norman Hooge.[2] The remaining eviden-

---

[1]. The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both *insured* and *disabled*. *See* 42 U.S.C. § 423(a); *see also Mathews v. Castro*, 429 U.S. 181, 186, 97 S.Ct. 431, 434, 50 L.Ed.2d 389 (1976). DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1 (14th ed.2001), *available at* http://www.ssa.gov/OP_Home/handbook.

[2]. Mr. Hooge is a certified rehabilitation counselor who works as a consultant in Human Services. Tr. 50. Vocational Experts are utilized by the ALJ to determine complex issues, such as whether a claimant's "work skills can be used in other work and the specific occupations in which they can be used." 20 C.F.R. § 404.1566(e) (2005).

tiary record consisted of reports from treating sources;[3] a "Residual Functional Capacity Assessment—Mental" completed by a medical consultant who reviewed plaintiff's medical records upon request of Texas Department of Disability Determinations;[4] and a consultative examination report from a psychiatrist, Dr. Jackson T. Achilles, M.D.

### III. ADMINISTRATIVE DECISION

The Commissioner prescribes a five-step sequential evaluation analysis to aid in determining when claimants are disabled. If a claimant is found disabled—or not disabled—at any step, the remaining steps are not considered. 20 C.F.R. § 404.1520 (2005). This procedure has judicial approval as a fair and just way for determining disability applications in conformity with the Social Security Act. *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

ALJ Howard found that plaintiff is not working (Step One), and has severe impairments, affective mood disorder and anxiety related disorder (Step Two). He concluded that these impairments do not meet or medically equal any impairment in Listing of (presumptively disabling) Impairments (Step Three).[5] At Step Four, ALJ Howard first determined that plaintiff has residual functional capacity[6] for "work . . . at any exertional level" with the following restrictions: "limited contact with the public, co-workers, and supervisors." Tr. 18. Then, based on expert vocational testimony (Tr. 333, 337–338), ALJ Howard found that plaintiff "is able to perform her past relevant work as general clerk as it is usually performed in the national economy." Tr. 19. ALJ Howard noted that VE Hooge testified that "approximately 60% of General Clerk jobs only require limited contact with co-workers. Thus, claimant could return to her past relevant work." Tr. 19.

A finding that plaintiff can still perform past relevant work compelled ALJ Howard to conclude that plaintiff "has not been under a 'disability,' as defined in the Social Security Act, at any relevant time through the date of this decision." Tr. 20, Finding 9. Plaintiff's application, therefore, was denied.

### IV. POINTS OF ERROR

Plaintiff alleges the following errors:

---

3. Dr. Robert Faseler, D.O., who provided general medical care (treatment for upper respiratory problems, etc.) (Tr. 104–122; 138–142); University of Texas Medical Branch in Galveston, Texas, which treated plaintiff for endometriosis (Tr. 138–153); and Family Services of Southeast Texas, where plaintiff received counseling for depression and anxiety (Tr. 154–206).

4. Dr. Mehdi Sharifian, M.D. Tr. 212–229. "A medical consultant is a person who is a member of a team that makes disability determinations in a State agency, as explained in § 404.1615, or who is a member of a team that makes disability determinations for us when we make disability determinations ourselves." 20 C.F.R. § 404.1616(a) (2005).

5. Appendix I, Subpart P, Part 404 of the Regulations lists impairments and indicators of medical severity. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2005). A person whose impairment meets or equals an impairment in the Listing is presumptively disabled. 20 C.F.R. § 404.920(d) (2005); *See* Soc. Sec. R. 88–3c (1988), 1988 WL 236022, at *7.

6. "Residual functional capacity (RFC) is defined as 'the most you can still do despite your limitations.'" 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2005). It has three components: physical abilities, mental abilities, and other impairments. *Id.*

1. "The Commissioner failed to apply proper *principles of law* because . . . the ALJ failed to set out whether the Plaintiff could perform the non-exertional demands on a regular and continuing basis."

2. The ALJ's (sic) erred in improperly relying on the responses of the VE to an incomplete hypothetical question.

3. The ALJ failed to make explicit and necessary findings as to the physical and mental demands of the Plaintiff's past work.

4. The ALJ failed to adequately develop the administrative record regarding the Plaintiff's prior relevant work.

Pl.'s Br. at p. 1.

## V. DISCUSSION

### A. Failure to Make an Explicit Finding That Plaintiff Can Work on a Regular and Continuing Basis

■ Disability determinations turn on whether applicants can perform substantial gainful activity. Substantial gainful activity contemplates capacity for employment on a regular and continuing basis. *See, e.g., Frank v. Barnhart,* 326 F.3d 618, 621 (5th Cir.2003); *Watson v. Barnhart,* 288 F.3d 212, 217 (5th Cir.2002) (both cit-

ing *Singletary v. Bowen,* 798 F.2d 818 (5th Cir.1986)).[7] In absence of an express finding, reviewing courts generally assume that administrative residual functional capacity assessments include *implicit* findings of ability to work on a regular and continuing basis. *See Frank,* 326 F.3d at 619 ("Usually, the issue of whether the claimant can maintain employment for a significant period of time will be subsumed in the analysis regarding the claimant's ability to obtain employment.") Only when medical or other evidence shows that symptoms caused by a severe impairment "wax and wane"[8] is a separate, explicit finding required. See *Watson,* 288 F.3d at 217–218; *Frank,* 326 F.3d at 619.

Plaintiff cites no medical evidence suggesting that symptoms of her mental impairments wax and wane, and the court's independent review fails to disclose such evidence. Instead, plaintiff relies solely on her own subjective testimony (which ALJ Howard did not accept) that she "panic[s] under various work situations," particularly working under time constraints. Pl.'s Br. at p. 13. Under prevailing case law cited in note 8, it is unclear whether this evidence, even if credited, would rise to the level that triggers a requirement to make an explicit finding regarding ability to maintain employment. But assuming

---

7. In accord are the Commissioner's regulations which now require administrative adjudicators to determine residual functional capacity for work activity *"on a regular and continuing basis."* 20 C.F.R. § 404.1545(b) (2004)(italics added). Finally, work on a regular and continuing basis means *"8 hours a day, for 5 days a week, or an equivalent work schedule."* Soc. Sec. R. 96–8p (1996), 1996 WL 374184, at *2.

8. When symptoms wax and wane is a case-specific determination. In one case, the Court of Appeals for the Fifth Circuit stated that periodic loss of movement in one's legs due to degenerative disc disease might constitute a waxing and waning symptom. *Watson,*

288 F.3d at 218. In another case, the Court stated that ability to work only for short periods of time due to mental impairment may also preclude maintaining employment. *Singletary,* 798 F.2d at 822–823. In yet another case, the Court found that a claimant's allegation of general inability to work fails to "establish the factual predicate . . . to necessitate a separate finding" of "whether the claimant is capable of maintaining employment." *Frank,* 326 F.3d at 619. Similarly, an allegation that impairment causes "good days and bad days . . . . simply do[es] not rise to the level of impairment anticipated by the Court in *Frank." Perez v. Barnhart,* 415 F.3d 457, 465 (5th Cir.2005).

*arguendo* that it could, plaintiff's point fails in this case because plaintiff's testimony suggests that she *consistently* panics in specified work situations, not that her panic response is unpredictable or waxing and waning. *See* Tr. 314, 316, 318.

In sum, no evidence of record establishes waxing and waning of symptoms. Therefore, plaintiff's ability to maintain employment properly is subsumed in ALJ Howard's residual functional capacity assessment. *See Perez*, 415 F.3d at 465. That being the case, there was no legal requirement that ALJ Howard make a separate, explicit finding on the point. Plaintiff's first point of error therefore fails.

## B. Remaining Points of Error

■ Plaintiff's remaining points of error usually implicate analytically separate and distinct issues. Here, however, each remaining point—as argued—hinges on a single contention that ALJ Howard erred in rejecting plaintiff's subjective testimony that she panics and is unable to work under time constraints. To explain, if ALJ Howard so erred, (1) his hypothetical question to the vocational expert witness was defective because it failed to incorporate all of plaintiff's disabilities (Point of Error 2); (2) his failure to make findings regarding physical and mental demands of plaintiff's past work (a violation of *"Titles II and XVI: A Disability Claimant's Capacity to Do Past Relevant Work, in General,"* Soc. Sec. R. 82–62 (1982), 1982 WL 31386) arguably prejudiced plaintiff's application (Point of Error 3);[9] and (3) he arguably failed to develop the administrative record fully (Point of Error 4).[10]

Plaintiff testified that she panics and is unable to work when around co-workers or under time constraints. Tr. 316, 318. ALJ Howard partially credited that testimony because he found that plaintiff must be restricted to "work with limited contact with the public, co-workers, and supervisors." Tr. 18. However, he did not accept plaintiff's testimony that she panics when working with time constraints. Instead, based on his evaluation of plaintiff's testimony regarding ability to pay bills, participate in Internet auctions, follow soap opera plots on television, and enjoy reading, he found that plaintiff has "no limit in the area of concentration, persistence and pace." Tr. 16. Moreover, when ALJ Howard listed restrictions affecting plaintiff's ability to work, he omitted any reference to inability to work with time constraints. Tr. 18.

Plaintiff argues that ALJ Howard improperly evaluated plaintiff's reported capacity to deal with time constraints in a work setting because plaintiff's subjective complaint is supported by medical evidence. Specifically, plaintiff argues that the report of the non-examining state agency physician (Dr. Mehdi Sharifian, M.D.) confirms plaintiff's alleged limitation. Pl.'s Rep. Br. at p. 1.

The task of determining when subjective complaints are credible is difficult and inherently imprecise. The Commissioner and the courts together endeavor to fashion a three-pronged "analytical rubric which, when employed, enables claims adjudicators to reach reasonably fair results with substantial consistency." *Prince v. Comm'r of Soc. Sec.*, 418 F.Supp.2d 863, 869 (E.D.Tex., 2005). That rubric consists

---

9. Plaintiff's prejudice argument is premised on an *ipse dixit* assertion that clerical work inherently requires working under time constraints. Pl.'s Br. at p. 18.

10. Plaintiff argues that failure to ask the *vocational expert* to address her alleged inability to function under time constraints constituted failure to develop the record adequately. Pl.'s Br. at p. 18. As such, Point of Error 4 is a variant of Point of Error 2.

of a *regulation* that requires administrative adjudicators to conduct a seven-factor analysis when determining credibility of a claimant's subjective complaints. Regulation 20 C.F.R. § 404.1529(c)(3) (2005).[11] It consists also of a formal *ruling* requiring administrative adjudicators to make specific credibility findings regarding subjective testimony in certain circumstances. Soc. Sec. R. 96–7p (1996), 1996 WL 374186, at *1.[12] Finally, it consists of *court decisions* which require "articulated reasons for discrediting the claimant's subjective complaints" when uncontroverted medical evidence shows a basis for a claimant's subjective complaints or the evidence otherwise clearly supports the plaintiff's application. *See Abshire v. Bowen,* 848 F.2d 638, 642 (5th Cir.1988); *Falco v. Shalala,* 27 F.3d 160, 163 (5th Cir.1994).

Here, plaintiff does not argue that ALJ Howard disregarded or misapplied the prescribed analytical model, nor does the court's independent review disclose any obvious violation. ALJ Howard cited Regulation 20 C.F.R. § 404.1529 and Social Security Ruling 96–7p, thus acknowledging his familiarity with those standards and his duty to apply them. Tr. 18. Moreover, this was not a case of uncontroverted evidence establishing plaintiff's inability to work with time constraints. Certain aspects of plaintiff's testimony—cited by ALJ Howard—and also reports of the examining psychiatrist, Dr. Achilles, and the agency physician, Dr. Sharifian, raise a genuine fact issue on that point.[13] Therefore, ALJ Howard was not obliged to articulate specific reasons for his credibility choices. Clearly, ALJ Howard committed no general or structural analytical error.

Second, ALJ Howard did not ignore plaintiff's testimony or Dr. Sharifian's findings. He summarized plaintiff's testimony commencing at Tr. 17, and credited much of it as it pertained to social functioning. He also specifically referred to Dr. Sharifian's conclusion that plaintiff is moderately limited in the area of carrying out detailed instructions and maintaining attention and concentration for extended periods of time. Tr. 17.

11. The adjudicator must compare subjective testimony with certain objective factors, specifically:

(1) plaintiff's daily activities;

(2) location, duration, frequency and intensity of pain or other symptoms;

(3) precipitating and aggravating factors;

(4) type, dosage, effectiveness and side effects of medication taken to relieve pain or other symptoms;

(5) treatment, other than medication, undertaken to relieve pain or other symptoms;

(6) any other measures used to relieve pain or other symptoms; and

(7) other factors concerning functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1520(c)(3) (2005).

12. Social Security Ruling 96–7p states:

"When the existence of a medically determinable physical or mental impairment(s) that could reasonably be expected to produce the symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. This requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."

Soc. Sec. R. 96–7p (1996), 1996WL374186, at *1.

13. Dr. Achilles concluded that plaintiff exhibits *no decrease in her ability to complete tasks.* Tr. 208. Dr. Sharifian concluded that plaintiff "retains the ability to understand, remember and carry out simple instructions, use reasonable judgment about simple decisions and personal safety, respond appropriately to supervisors and coworkers and to *respond appropriately to changes in routine work settings.*" Tr. 214.(italics added).

That being the case, the issue ultimately turns on whether ALJ Howard misinterpreted Dr. Sharifian's findings of moderate limitations upon which plaintiff relies. Dr. Sharifian checked boxes on a form (SSA–4734–BK–SUP (8–85)) that he found plaintiff to be "moderately limited" in several aspects of sustained concentration and persistence. ALJ Howard remarked that Dr. Sharifian found that plaintiff was *"only* moderately limited." Tr. 17 (italics added). Thus, ALJ Howard did not consider these moderate limitations as proof of disability.

When reviewing ALJ Howard's decision, the court should first note that Dr. Sharifian made no *explicit* findings regarding plaintiff's alleged inability to work with time constraints. Assuming *arguendo* that his moderate-limitation findings are relevant to that issue, ALJ Howard did not misapply the facts to governing standards. A moderate limitation in a functional area generally indicates a severe but not presumptively disabling impairment. *See* 20 C.F.R. § 404.1520a(d)(1)-(3) (2006). Mental impairments are evaluated according to a five-point scale: *"none, mild, moderate, marked, and extreme,"* with only "the last point represent[ing] a degree of limitation that is incompatible with the ability to do any gainful activity." *See* 20 C.F.R. § 404.1520a(c)(4) (2005) (italics added). Finally, case law establishes that *moderate* subjective symptoms are *not disabling* absent "overwhelming evidence" of "significant nonexertional impairments." *Newton v. Apfel,* 209 F.3d 448, 459 (5th Cir.2000) (citing *Richardson v. Bowen,* 807 F.2d 444, 448 (5th Cir.1987)).

Plaintiff points to—and the court can discern—no other evidence supporting her complaint that she cannot cope with time constraints in the work place. This fails to comprise "overwhelming evidence" of "significant nonexertional impairments" as required by *Newton.*

In sum, ALJ Howard acted within his sound discretion in declining to find that plaintiff's residual functional capacity is limited by inability to work with time constraints. That being the case, the cornerstone or fundamental assumption underlying each of plaintiff's remaining points of error crumbles. There is no need, therefore, to analyze them further or individually.

## VI. RECOMMENDATION

The Commissioner's decision should be affirmed.

## VII. OBJECTIONS

Objections must be: (1) specific, (2) in writing, and (3) served and filed within ten days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R.Civ.P. 1(a), 6(b), and 72(b).

A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge of proposed findings and recommendations, *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988), and (2) appellate review, except on grounds of plain error, of unobjected-to factual findings and legal conclusions accepted by the district court, *Douglass v. United Servs. Auto. Ass'n.,* 79 F.3d 1415, 1417 (5th Cir.1996) (en banc).

May 16, 2006.