United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 10, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-10233

DAVID SCOT PEKRUL

                                        Plaintiff-Appellant,

                        versus

JO ANNE B. BARNHART,
Commissioner of Social Security,

                                        Defendant-Appellee,

Appeal from the United States District Court for
the Northern District of Texas

Before REAVLEY, GARZA and BENAVIDES Circuit Judges.

PER CURIAM:[*]

    David Scot Pekrul appeals the district court's decision affirming the

Commissioner's denial of social security disability benefits.  We affirm for the

following reasons:

---

    [*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should
not be published and is not precedent except under the limited circumstances set forth in
5TH CIR. R. 47.5.4.

1

1.      We agree with the analysis offered in the magistrate judge's findings, conclusions, and recommendation and the district court's order accepting the magistrate's recommendation.

2.      Pekrul first argues that the Commissioner failed to meet her burden of proof because evidence of the cumulative number of jobs exist in the national economy and the State of Texas fails to take into account the number of jobs existing in Pekrul's region–Ellis County, Texas.  Under 42 U.S.C. § 423(d)(2)(A) and 20 C.F.R. § 416.966, work exists in significant numbers in the national economy if it exists in significant numbers in either the region where the claimant lives or in other regions of the country.  In light of the Vocational Expert's ("VE") testimony that Pekrul could perform the jobs of election clerk, call-out operator, and surveillance-system monitor and that 79,900 such jobs exist in the national economy, and that 5,983 such jobs exist in the State of Texas, substantial evidence supports the Commissioner's finding that Pekrul is not entitled to Social Security disability benefits.

3.      Pekrul next argues that the job of election clerk exists only at election time.  He also contends that he unable to perform the jobs of call-out operator and surveillance-system monitor.  The ALJ found that Pekrul

        has the residual functional capacity to lift and/or carry 5 pounds

2

frequently and 10 pounds occasionally, frequently to crouch, kneel and crawl, occasionally to climb, balance and stoop, and occasionally to reach, handle and finger. Therefore, [Pekrul] has the residual functional capacity [RFC] to perform a limited range of sedentary work.

The jobs of election clerk, call-out operator, and surveillance-system monitor are sedentary jobs, *see* U.S. DEP'T OF LABOR, DICTIONARY OF OCCUPATIONAL TITLES (DOT) §§ 205.367-030, 237.367-014, 379.367-010 (4th Ed., Rev. 1991), which the regulations define as jobs that involve "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). The three jobs also involve speaking on the telephone, operating controls, and submitting data. *See* DOT §§ 205.367-030, 237.367-014, 379.367-010. These tasks are not inconsistent with the RFC found by the ALJ.

Further, the ALJ properly asked the VE "are there a substantial number–are there any occupations in the national economy that could be performed by a hypothetical individual having the [RFC] to perform a limited range of work with only occasional reaching, handling, and fingering." The VE responded that Pekrul could work as an election clerk, call-out operator, or surveillance-system monitor. Thus, the ALJ's question to the VE incorporated the limitations recognized in the RFC assessments, and the

3

assessments of Pekrul's abilities constitute substantial evidence supporting the determination that Pekrul could perform the three jobs listed.

4.     Pekrul next argues that the ALJ did not appropriately consider his impairment over time and relied solely on the opinion of Dr. Goldberg. We find that the ALJ's decision reflects an evaluation of all of the information relevant to Pekrul's claims. The ALJ chronologically considered the medical evidence, emphasizing dates that Pekrul was seen by various doctors and the results of their reports. The ALJ noted the types of treatment Pekrul received through time and the dates of various diagnostic tests performed. Accordingly, there is no basis in fact for Pekrul's assertion that the ALJ did not appropriately consider his impairment during the entire relevant period or relied solely on the opinion of Dr. Goldberg.

5.     Pekrul further argues that the ALJ erred by failing to appropriately consider whether he could sustain work activity due to the episodic nature of his symptoms and surgeries. The ALJ's determination that Pekrul had the RFC to perform sedentary work is a determination that he is able to sustain work-related activities on a "regular and continuing basis," meaning "8 hours a day for 5 days a week." *See* Social Security Ruling 96-8p (July 2, 1996); 20 C.F.R. §§ 404.1545, 416.945. The evidence did not show that Pekrul's

4

ability to maintain employment would be compromised despite his ability to perform employment as an initial matter, and there is no indication that the ALJ did not understand that an ability to maintain employment is inherent in the definition of residual functional capacity. *See Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Therefore, the ALJ was not required to make a specific finding with regard to Pekrul's ability to maintain employment. *Id.*

6. Pekrul contends that the RFC assessment performed by Dr. Goldberg overstated what he was capable of doing on a sustained, daily basis. Pekrul argues that the ALJ failed to consider his endurance, and Dr. Goldberg failed to test his endurance. In addition, Pekrul argues that Dr. Goldberg failed to account for his inability to use the telephone, to use the computer to do repetitive tasks, and to use vibrating tools, and failed to address his need to frequently rest his hands. We find Pekrul's arguments without merit. Dr. Goldberg tested Pekrul's grip on the dynamometer and noticed considerable weakness. However, Dr. Goldberg noted no muscle atrophy, wasting, arthritis, subluxation, deformity, ankleosis, effusion, swelling, or heat. In addition, Dr. Goldberg completed a checklist relevant to Pekrul's RFC. Accordingly, Pekrul has not shown that Dr. Goldberg's report was inadequate

5

to determine "the most [he] can do despite [his] limitations." 20 C.F.R. § 404.1545(a) (defining RFC).

7.     Pekrul also contends that the ALJ erred by failing to give proper weight to Dr. Zehr's opinions of September 13, 2000, August 12, 2002, and February 18, 2002, regarding his disability. Dr. Zehr indicated on September 13, 2000, that Pekrul could not work and noted that Pekrul's employer had no positions available that would accommodate Pekrul's restrictions. This finding has no special significance. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) ("Among the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.'"). Further, Dr. Zehr's opinions of August 12, 2002, and February 18, 2002 were not included in the record before the ALJ, and neither opinion contained any details regarding Pekrul's condition. Accordingly, Pekrul has failed to demonstrate error regarding the weight given to Dr. Zehr's opinion.

8.     Pekrul argues that the Appeals Council erred by failing to remand his case to the ALJ based on a "Temporary Total Disability Deferment Request" form that he submitted to the Appeals Council after the ALJ denied him benefits. This form contained no details regarding Pekrul's condition.

6

Therefore, Pekrul cannot demonstrate any prejudice resulting because the Appeals Council did not remand this case. *See Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001).

AFFIRMED.