# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-30871
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**

January 9, 2017

Lyle W. Cayce
Clerk

LEAH ROBEIN HECK,

      Plaintiff - Appellant

v.

CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL
SECURITY,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CV-3483

Before KING, DENNIS, and COSTA, Circuit Judges.

PER CURIAM:*

      Plaintiff–Appellant Leah Heck appeals the denial of her application for disability insurance benefits.  Because Defendant–Appellee, the Commissioner of Social Security, applied the proper legal standards in denying Heck's

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-30871

application and substantial evidence supports the Commissioner's decision, we AFFIRM.

## I. FACTS AND PROCEEDINGS

Plaintiff–Appellant Leah Heck filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act on January 23, 2013. *See* 42 U.S.C. § 423. Her application alleged a disability onset date of June 10, 2006, due to "bipolar 1mixed rapid cycling," migraines, and manic depression. After Heck's claim was denied initially and again upon reconsideration, she requested a hearing before an administrative law judge (ALJ). Heck and an impartial vocational expert both testified at the hearing. After the hearing, the ALJ issued a decision concluding that Heck did not qualify for DIB because she was not disabled during the relevant time period. The Appeals Council denied Heck's request for review, at which point the ALJ's decision became a final decision of the Commissioner of Social Security. Having exhausted her administrative remedies, Heck filed suit in federal district court for review of the Commissioner's decision. The district court accepted the recommendation of the magistrate judge to affirm the Commissioner's decision and dismissed the case with prejudice. Heck timely appealed.

## II. STANDARD OF REVIEW

Our review of a final decision of the Commissioner on a social security disability claim "is exceedingly deferential," *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012), and "is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole, and (2) whether the Commissioner applied the proper legal standard," *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (quoting *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion' and constitutes 'more than a mere

No. 16-30871

scintilla' but 'less than a preponderance' of evidence." *Hardman v. Colvin*, 820 F.3d 142, 147 (5th Cir. 2016) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). "Any findings of fact by the Commissioner which are supported by substantial evidence are conclusive." *Taylor*, 706 F.3d at 602 (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). "In applying this standard, we 'may not reweigh the evidence or substitute [our] judgment for the Commissioner's.'" *Copeland*, 771 F.3d at 923 (alteration in original) (quoting *Perez*, 415 F.3d at 461). "We may affirm only on the grounds that the Commissioner stated for h[er] decision." *Id.*

## III. DISCUSSION

In order to be eligible for DIB, a claimant must prove she has a medically determinable physical or mental impairment, or combination thereof, lasting at least 12 months, which prevents her from engaging in substantial gainful activity.[1] 42 U.S.C. § 423(d)(l)(A). The Social Security Administration uses a five-step analysis to determine whether a claimant is disabled:

> (1) a claimant who is working, engaging in a substantial gainful activity, will not be found to be disabled no matter what the medical findings are; (2) a claimant will not be found to be disabled unless he has a "severe impairment"; (3) a claimant whose impairment meets or is equivalent to an impairment listed in Appendix 1 of the regulations will be considered disabled without the need to consider vocational factors; (4) a claimant who is capable of performing work that he has done in the past must be found "not disabled"; and (5) if the claimant is unable to perform his previous work as a result of his impairment, then factors such as his age, education, past work experience, and residual functional capacity must be considered to determine whether he can do other work.

---

[1] "Substantial gainful activity" is defined as work involving "significant physical or mental activities" that is done "for pay or profit." 20 C.F.R. § 404.1572.

No. 16-30871

*Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The claimant bears the burden of proof on steps one through four at which point the burden shifts to the Commissioner on step five to show that the claimant can perform other substantial work in the national economy, which the claimant must then rebut. *Perez*, 415 F.3d at 461. "[A] finding at any step that a claimant is or is not disabled ends the analysis." *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citing *Bowling*, 36 F.3d at 435). Here, the ALJ completed all five steps of the analysis before concluding that Heck was not disabled.

On appeal Heck challenges six aspects of the ALJ's decision. We address each challenge in turn.

**A. Failure to consider Heck's Migraines**

First, Heck argues that the ALJ failed to consider her migraine condition in assessing whether she was disabled. However, as the Commissioner notes, Heck does not identify any additional work-related limitations resulting from her migraines that the ALJ should have considered in assessing Heck's claim. Without such additional limitations, any failure by the ALJ to specifically consider migraines as an additional impairment could not have prejudiced Heck. Accordingly, we conclude that this alleged omission by the ALJ, even if found to be in error, "is irrelevant to the disposition of [Heck's] case" and thus cannot provide a basis for reversal. *Id.* (quoting *Chaparro*, 815 F.2d at 1011); *see also Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996) ("We will not reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that [s]he was prejudiced in any way by the deficienc[y] [s]he alleges.").

4

No. 16-30871

## B. Finding that bipolar disorder did not meet regulation criteria

Second, Heck claims that the ALJ erred at step three of the analysis by finding that Heck's bipolar disorder did not meet the medical criteria contained in the regulation. At step three the ALJ determines whether the claimant has an impairment that meets or equals those listed in Appendix 1 of the regulations. Appendix 1 provides, in relevant part, that a finding of certain affective disorders constitutes a disability.[2] 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The ALJ found that Heck's bipolar disorder did not meet the listed criteria and thus did not constitute a disability.[3] This finding was not in error. The burden was on Heck to show that her bipolar disorder met the criteria provided in the Appendix medical listing. *See Sullivan v. Zebly*, 493 U.S. 521, 530 (1990); *Perez*, 415 F.3d at 461. We have previously recognized that "[t]he

---

[2] The regulation provides that in order to meet the requirements of an affective disorder, the claimant must have, inter alia:

A. . . . Bipolar syndrome . . .; AND

B. Resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration;
    OR

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following symptoms:
    1. Repeated episodes of decompensation, each of extended duration; or
    2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
    3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. pt. 404, subpt. P, app. 1§ 12.04.

[3] The ALJ appeared to assume that Heck met paragraph A and then found that she did not meet either paragraph B or C.

5

criteria in the medial listing are 'demanding and stringent,'" *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994), and "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify" as a disability, *Sullivan*, 493 U.S. at 530. Yet on appeal Heck fails to explain how her symptoms align with the criteria of the Appendix medical listing. She cites testimony about her medical history at length, but does not show how this medical evidence demonstrates that she meets each of the required criteria under the Appendix medical listing. Accordingly, she has not met her burden to demonstrate that her disability meets the criteria under the Appendix medical listing, and the ALJ did not err in finding that her bipolar disorder did not meet the criteria.

## C.  Opinion of Dr. Henderson

Third, Heck argues that the ALJ erred by failing to give proper weight to the opinions of her treating physician, Dr. Henderson, that were contained in responses to a mental impairment questionnaire. The ALJ explained that she considered Dr. Henderson's responses to the questionnaire but did not accord them controlling weight because they were "completely inconsistent with [Dr. Henderson's] own internal records," were "made less than one-year post [Heck's back] surgery," and "did not contain a function-by-function analysis." We find no error in this determination. Although the opinion of a claimant's treating physician generally deserves "considerable weight in determining disability," this is not so when the physician's testimony is "brief and conclusory . . . or otherwise unsupported by the evidence." *Perez*, 415 F.3d at 465-66 (quoting *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). We have previously characterized responses to a "'questionnaire' format" as "typi[cal] 'brief or conclusory' testimony" and declined to accord these responses controlling weight when they lack "explanatory notes" or "supporting objective tests and examinations." *Foster v. Astrue*, 410 F. App'x

831, 833 (5th Cir. 2011).   Similarly here, Dr. Henderson's questionnaire responses were not supported by any accompanying diagnostic tests or specific clinical examinations.   Further, we have recognized that an ALJ "is not required to give controlling weight to a treating physician opinion when . . . 'there is competing first-hand medical evidence.'" *Walker v. Barnhart*, 158 F. App'x 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).   Here, the ALJ found that Dr. Henderson's questionnaire responses were inconsistent with even his own medical records and that finding is supported by substantial evidence.   Nor did the ALJ err in failing to consider the factors identified in the regulation before declining to give controlling weight to Dr. Henderson's responses, *see* 20 C.F.R. § 404.1527(c), because such consideration is required only when there is no other reliable evidence from treating physicians that contradicts the responses, *see Newton*, 209 F.3d at 453.   In declining to give controlling weight to Dr. Henderson's questionnaire responses, the ALJ performed her role of weighing conflicting evidence and resolving the conflict, and we perform our limited role of ensuring that this decision is supported by substantial evidence, which it is.   *See Greenspan*, 38 F.3d at 237 ("Substantial evidence supports the ALJ's decision to disregard the physicians' conclusions. That basis is enough to support our review.").

## D.  Credibility determination

Fourth, Heck claims that the ALJ erred in finding that some of her testimony was not credible.  The ALJ found that Heck's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [we]re not entirely credible."  We have recognized that "[i]t is within the ALJ's discretion to determine the disabling nature of a claimant's pain," and we accord this determination "considerable deference."  *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001).  And this court is "not well positioned to second-guess [the ALJ's] credibility determination so long as the ALJ's ultimate finding [that

Heck is not disabled] was supported by substantial evidence." *Hardman*, 820 F.3d at 148 (citing *Sun v. Colvin*, 793 F.3d 502, 508 (5th Cir. 2015)). Because we conclude that substantial evidence supports the ALJ's ultimate finding of no disability, we defer to the ALJ's credibility assessment and do not address this argument any further.

## E. Failure to consider whether Heck could maintain employment

Fifth, Heck argues that the ALJ erred by considering only whether her symptoms allowed her to obtain employment rather than her ability to both obtain and maintain employment.   Citing this court's decisions in *Watson v. Barnhart*, 288 F.3d 212 (5th Cir. 2002), and *Frank v. Barnhart*, 326 F.3d 618 (5th Cir. 2003), Heck argues that because her symptoms waxed and waned, the ALJ was required to make a specific finding that she was able to maintain, as well as obtain, employment.  Heck relies on two pieces of evidence: a statement by Dr. Henderson that her relapses were "frequent and unpredictable" and a statement by her orthopedic surgeon that Heck "show[ed] a rather classical waxing and waning of low back symptomology variably discussed as good days and bad days."  In *Watson* this court held that the ALJ erred in failing to consider the claimant's ability to maintain employment in making the disability determination because the claimant's "degenerative disc disease prevented him from maintaining employment . . . because every number of weeks he lost movement in his legs."  288 F.3d at 218.  However, in *Frank*, decided the year after *Watson*, "[t]his court made clear . . . that 'nothing in *Watson* suggests that the ALJ must make a specific finding regarding the claimant's ability to maintain employment in every case.'"  Perez, 415 F.3d at 465 (quoting *Frank*, 326 F.3d at 619).  The court concluded that no such finding was required in *Frank*, explaining that to trigger *Watson*'s requirement a claimant must allege, for example, that her condition prevents her from maintaining employment "because every number of weeks she lost movement

8

in her legs." 326 F.3d at 619. This is because "[i]t is axiomatic that the pain from any type of ailment will vary in intensity," so a claimant must allege more than mere pain variation to trigger Watson's requirement for a finding on ability to maintain employment. *Perez*, 415 F.3d at 465. Evidence that a claimant "has 'good days and bad days,'" even if credible, "simply do[es] not rise to the level of impairment anticipated by the Court in *Frank*." *Id.* (alteration in original). The evidence upon which Heck relies does not demonstrate that she can only work in short spurts or is beset by intensified specific symptoms at regular intervals. Therefore, Heck fails to show that her symptoms rise to the level of impairment necessitating a separate finding of ability to maintain employment. The ALJ therefore did not err in failing to make such a finding.

## F. Medication side effects

Sixth and finally, Heck argues that the ALJ erred in making the disability determination by failing to consider the drowsiness that is a side effect of her medication. In support of this argument, Heck relies exclusively on her own testimony, save for a single reference to a questionnaire response by Dr. Henderson where he stated, in response to a question about side effects that "may have implications for working," that drowsiness was a side effect of her medication. In determining whether a claimant has a disability, the ALJ is required to consider all of the evidence presented, including "side effects of any medications" the claimant takes. 20 C.F.R. § 404.1529(c)(3)(iv). But we note that both of the sources of evidence upon which Heck relies for this argument were given less weight by the ALJ. Further undercutting these two sources of evidence, Heck's medical records contain numerous instances where she either denied experiencing any side effects from her medication or failed to report drowsiness as a side effect to the doctors prescribing the medication. At best, there is competing evidence regarding whether Heck suffered drowsiness

No. 16-30871

as a side effect of her medication and we will not disturb the ALJ's decision regarding how best to resolve this conflict.

## IV. Conclusion

For the foregoing reasons, the judgment of the district court is AFFIRMED.